## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH, individually
    Plaintiff,

        -vs

United States Of America and
The Federal Bureau of Prisons.
    Defendants.

-------------------------------x

**3 : CV01 - 1026**

Civil Action No.

Application for Appointment
of Marshal for Service

FILED
SCRANTON
JUN 0 8 2001

PER _____ {CM}
DEPUTY CLERK

      Plaintiff hereby requests the Court to appoint a United States Marshal or Deputy, United States Marshal to serve the Summons and Complaint in the above-entitled action on defendants United States of America and The Federal Bureau of Prisons, pursuant to Federal Rules Civil procedure 4(c)(2).

      The Complaint in this action was filed on May    2001.

Respectfully submitted,

*Jerome Smith*

Jerome Smith, Pro se
Plaintiff

## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH, individually                )
    Plaintiff,                             )
                             )
                           )  **3:CV01-1026**
     -vs                                )  Civil Action No.
                           )
                           )  SUMMONS
UNITED STATES of America and               )
The Federal Bureau of Prisons.            )
    Defendants.                            )

**To the above named Defendant:**

You are hereby summoned and required to serve Jerome Smith, Plaintiff, whose address is P.O. Box 1000, Montgomery, Pennsylvania 17752 Allenwood Federal Prison Camp, an answer to the Complaint which is herewith served upon you, within 60 days, after service of this Summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

                                          _____
                                          Clerk of Court

Dated:_____

(This Summons is issued pursuant to Rule 4 of the Federal Rules of Civil Procedure).



# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH, individually
    Plaintiff,

        -vs

UNITED STATES of America and
The Federal Bureau of Prisons.
    Defendants.

**COPY**

**3 : CV01-1026**

CASE No.

COMPLAINT

**FILED
SCRANTON**

JUN 0 8 2001

PER _____
       **DEPUTY CLERK**

### TORT CLAIMS ACT COMPLAINT
### WITH JURY DEMAND

This Tort Claims Act action is filed by Plaintiff Jerome Smith, a Federal Prisoner alleging medical malpractice and seeking money damages, declaratory judgement, and plaintiff requests trial by jury.

### JURISDICTION

1.    This is a Tort Claims Action under 28 U.S.C. § 2671 et. seq.  This Court has jurisdiction under 28 U.S.C. § 1346(b).  Plaintiff also invokes the pendent jurisdiction of this Court.

-1-

## PARTIES

2.    Plaintiff, Jerome Smith is presently incarcerated at the Allenwood Federal Prison Camp in Montgomery, Pennsylvania.

3.    Defendant, United States of America operates a prison system and is responsible for the care, health and welfare of federal prisoners within its custody in the federal prison system.

4.    Defendant, United States Bureau of Prisons has the responsibility to provide suitable quarters and provide for safekeeping, care, and subsistence of all persons convicted of offenses against the United States.

## FACTS

5.    On September 30, 1996, Smith arrived at FCI Fort Dix, New Jersey, for his Initial Classification and service of sentence.  The Unit-Team, recommended his participation in the Financial Responsibility Program (FRP), and that he be assigned to an approprate work detail.  (Exhibit #1 ommitted)

6.    Smith was determined physically disabled prior to his incarceration by his treating doctors and the Social Security Administration.  This was due to Two work related injuries he sustained to his lower back.  The first injury occurred while he was employed at the Philadelphia Naval Shipyard in 1984.  The second injury occurred while on active duty for training with the Pennsylvania Army National Guard on June 17, 1993. (Exhibit#2 ommitted).

-2-

7.    Medical staff at FCI Fort Dix, had received Smith's past medical records, and had reviewed these document's during his Initial Intake physical examination process.  Past medical records indicated that Smith suffered from a disc herniation at L 4-5.  Medical staff having a accurate understanding of his medical history, diagnosis, and mode of past treatments.  This information was verified and documented by Ms Terri Calett-Ramos (HSA) Health Services Administrator and Ms Luisa Basile (SMLP).

8.    On October 1, 1997, Smith was assigned a work assignment in Unicor, Federal Prison Industries.  It is the policy of the Federal Bureau of Prisons to provide work to all inmates (including those whom suffer from a disability)(PS §345.10)

9.    At approximately 10:30 AM on December 10, 1998, Smith slipped on the floor in Unicor, business office falling over a desk, and hitting his left knee and lower back on the floor. (Exhibit #3 ommitted).

10.    Shortly thereafter, Smith began experiencing lower back pain and pain - in his legs.  His work detail supervisor Ms N. Brown, whom also witness the fall along with (20) other inmates, sent him to health services for examination of injuries. (Exhibit #4 ommitted).

11. Smith arrived having another inmate assist him to health services in which he was examined by S. Synjongtian Mid-Level Practitioner (PA) who as per request of the doctor ordered X-rays of his lower back and left knee.  He was given medical idle for (3) days bed rest and pain medication.  (Exhibit #5 ommitted).

12.   On December 15, 1998, Smith returned to his work
assignment at Unicor, still experiencing lower back and leg
pain which continued.

13.   On April 20, 1999, Smith was examined by Dr J. Chung, MD
Clinical Director at FCI Fort Dix, New Jersey, after reporting
to health Services complaining of lower back pain.  Previous
pain medications were discontinued, due to stomach discomfort
it was causing at which time Dr Chung, gave Smith a restricted
duty pass status of no prolong standing or sitting, over 30 min
and no lifting over 15 pounds.  No treatments were provided.
(Exhibit #6 ommitted)

14.   On June 2, 1999, Smith reported to Health Services
complaining of lower back pain.  Was examined by S. Syjongtian
(PA).  He was given a medical idle per request of Dr. Albert
Valenzuela, whom also schduled him to be seen by Dr. Ronald
M. Krasnick, MD (Bone Specialist).  No treatments were provided.
(Exhibit #7 ommitted)

15.   On June 14, 1999, Smith reported to Health Services
complaining of lower back pain, was given medical idle for
(3) days bed rest.  Was advised to watch call-out to be seen
by Dr. Krasnick for examination.  No treatments were provided.
(Exhibit #8 ommitted)

16.   On June 16, 1999, Smith reported to Health Services and
was examined by Dr. Krasnick whom documented the examination
and ordered a updated (MRI) study of the Lumbar Spine.
(Exhibit #9 ommitted)

17.    On June 23, 1999, Smith submitted a cop-out (Inmate Request to Staff Member) directed to Health Services requesting whether or not he had been scheduled to be seen by Dr. Krasnick for treatments.  He was instructed to watch call-out.

18.    On June 28, 1999, Smith reported to Health Services with lower back pain.  Was examined by V. Tan (PA) whom given him a medical idle for (3) days bed rest.  No treatments were provided.  (Exhibit #10 ommitted)

19.    On July 27, 1999, Smith submitted a cop-out to Ms Basile (MLP) at Health Services in regard to not receiving treatments for his back condition.  He indicated that he had been suffering since the fall while working within the scope of his prison employment-assignment and had not received treatments.  Ms Ramos (HSA) informed Smith that he had not been scheduled for furthered examination due to the red-tape in Washington, DC.  Ms Basile advised him to cooperate with medical staff instructions.  However, Smith never received any instructions concerning treatments for his condition from medical staff to follow.  (Exhibit #11 ommitted)

20.    On August 24, 1999, Smith received an (MRI) study of the Lumbar Spine.  The study was performed by Rancocas Orthopedic Associates.  (Exhibit #12 ommitted)

21.    On September 22, 1999, the (MRI) report was made available and forwarded to Health Services for review.  Dr. Krasnick submitted his findings and recommendations concerning what step should be taking by medical staff at Fort Dix.  (Exhibit #12 ommitted)

22.    The medical report from the (MRI) study indicated that the study was grossly abnormal.  The L 4-5 disc is now bulging centrally.  This is causing central canal stenosis and bilateral neuroforaminal stenosis.  At L5-S1, he has a new herniated disc on the right deforming the thecal sac and also impinging on the right S1 nerve root.  (Exhibit #13 ommitted)

23.  Also indicated in the report, Dr. Krasnick recommended that Smith be examined and evaluated by Dr. Ratner in terms of whether or not more aggressive management may be necessary. He instructed that treatments should be strictly symptomatic. (Exhibit #14 ommitted)

24.  On November 15, 1999, Smith reported to Health Services complaining of lower back pain.  He was given a medical idle for (3) days bed rest and was advised that he was not scheduled to be seen by Dr Ratner.  (Exhibit #15 ommitted)

25.   On December 16, 1999, Smith reported to Health Services to be examined by Dr. Elliott H. Coleman, MD whom was concerned with his blood pressure levels and blood sugar.  Dr. Coleman was also concerned with his lower back and leg pain which he indicated in his report.  He also recommended treatments and weight loss.  No treatments were provided.  (Exhibit #16 ommitted)

26.  On January 19, 2000, Smith reported to Health Services with lower back pain.  Was given medical idle for (3) days bed rest.  Still awaiting the examination from Dr Ratner, in terms of what treatment options were available.  No treatments provided.

27.   On February 1, 2000, Smith filed a Tort Claim documented as Tort Claim No. TRT-NER-2000-00454 seeking compensation for pain and suffering of the injury sustained on December 10, 1998.  This Tort Claim was rejected by Mr Henry J. Sadowski - Regional Counsel Philadephia, Northeast Regional Office citing claiming an injury while at a work assignment in Unicor, is excluded from coverage under the Federal Tort Claims Act.  He was instructed to file his claim at the Federal Prison Industies, Inc. Claims Examiners Office in Washington, DC.  Smith did not appeal.  (Exhibit #16 ommitted)

28.   On May 30, 2000, Smith was informed that due to the provisions of the inmate custody re-classification.  He would be soon transferred to a federal prison camp.  He therefore, requested a examination from Health Services before being transferred.  No treatments were provided.

29.   On July 5, 2000, Smith arrived at Allenwood Federal Prison Camp - montgomery, Pennsylvania.  Medical staff received his medical records from FCI Fort Dix, New Jersey.

30.   On July 10, 2000, Smith completed his arrival orientation and was placed on "regular duty status" by prison staff.  He was still experiencing lower back and leg pain.  He was assigned to landscape detail to cut grass.

31.   After working this work assignment for (6) weeks.  Smith began to have problems completing the work assignment tasks due to the servere lower back and leg pain.  He reported this to his supervisor and correctional counselor Mr Fetzer.

Smith informed his work supervisor that he was
legally disable and was unabled to perform the requested task.
After (8) weeks, Smith was able  to transfer to another work
assignment until he was able  to report to Unicor, Warehouse
to work at a desk assignment typing documents for C/O Hines
and C/O Fisher.

32.  On September 11, 2000, Smith reported to Health Services
complaining of lower back pain.  Was examined by David K. Angle
(PA) who reviewed  his medical records and verified the medical
health condition and issued a medical idle for (3) days bed rest.
Smith informed Mr Angle about his having discomfort with
previous pain medications given him which caused stomach
discomfort.  He was informed to return back to health services
after (3) days if did not feel better.  No treatments were
provided.  (Exhibit #17 ommitted)

33.  On September 13, 2000, Smith returned to Health Services
requesting additional bed rest due to lower back pain.  He
was examined by T. Bell (PA) whom declined to give him a
medical idle.  Instead, (Bell) issued a restricted duty pass
for no prolong standing or sitting for longer than 30 min.  He
also ask Smith "why are you here at a work camp if you can not
work".  He furthered stated "if you can go to the dinning room
to eat you can work".  He also told Smith that everybody at
Allenwood Federal Prison Camp works.  No treatments were provided.

34.  On this same day, Smith written a cop-out complaining about
the conduct of Bell (PA) whom refused to give a medical idle
due to his medical condition.

Smith seen Capt Luongo, at main-line and informed him that he was refused a medical idle and that Bell (PA) had shown deliberate indifference to his medical needs. Capt Luongo, spoke with Mr Bell and gave Smith that day off for best rest. No treatments were provided. (Exhibit #18 ommitted)

35. On August 3, 2000, Smith filed a Tort Claim No. TRT-NER-2000-02253 dated August 3, 2000, in which he was advised by Henry J. Sadowski Regional Counsel that his Office had (6) months to decide the claim under the Federal Tort Claim Act. Smith alleged in his claim that medical staff had not provided him with treatments for his serious medical problems in regard to his lower back problems and that the examining doctors had in fact recommended treatments. Thus, medical staff at FCI Fort Dix, New Jersey and Allenwood Federal Prison Camp, are both deliberate indifference to plaintiff's medical needs. Smith also alleged that no attemps were being made to reduce the pain and suffering he continues to experience. (Exhibit #19 ommitted)

36. On September 22, 2000, Smith reported to Health Services (Sick Call) with lower back pain. Was given medical idle for (3) days bed rest by David K. Angle (PA). No treatments were provided. (Exhibited #20 ommitted)

37. On September 25, 2000, Smith reported to Health Services with lower back pain. Was given idle from T. Bell (PA) for (3) days bed rest. No treatments or medications provided. (Exhibit #21 ommitted)

38.    On November 7, 2000, Smith reported to Health Services
receiving examination from out-side neurosurgeon.  It was
recommended that Smith now undergo surgical repair to remove
the disc herniations after receiving a new (MRI) study of
the Lumbar Spine.  Dr Biglete ordered the examination by the
neurosurgeon and informed Smith of the findings.  No treatments
or medications were provided.  (Exhibit #22 ommitted)

39.    On December 13, 2000, Smith became agitated after
his Unit Manager Mr. M. Furman, advised him that if he did not
clean under his cubical ventilation system, that he would receive
a incident report against him for failing to follow a direct order.
Smith was unabled on this day to perform the task due to his
lower back and leg pain.  He informed Mr Troy Levi (AW) about
this matter at which time Mr Levi advised him that he ought to
follow Mr Furman's orders.  Smith told Mr Levi that he was
going to call his attorney and informed them that he was being
forced to work at the Prison Camp and that he was not receiving
treatments as was recommended by examining doctors.  As Smith
walked away after communicating this, Mr Levi ordered (4)
correctional officers to take him to the lieutenants office.
Once there, Capt Luongo spoke with him and said Mr Levi did not
like the idea that Smith had stated he was going to call his
lawyers.  Mr Levi questioned and verified from health services
that Smith had not received treatments nor pain medications
for his lower back condition.  After speaking with medical
staff, Mr Levi ordered Smith to be taking to Allenwood Low

-10-

Security Institution - Segregation Housing Unit.  He was handcuffed and placed in restraints.  Once there, Smith experienced a depressive episode wherein, he also suffers from this disorder.  Dr Karpin, MD (Psychologist) whom had been treating him for this disorder was called in to interview him and to provide medications for his depression.

40.    On December 18, 2000, Smith was brought back to the Prison Camp - with no incident report being filed against him and spending (5) days locked in segregation only for communicating his intentions of informing his attorney of the ill treatments he was receiving from prison officials.  Thus, this incident violated his 8th Amendment right - against cruel and unusual punishment.

41.    On December 20, 2000, Smith had the (MRI) study at Susquehanna Valley Imaging - Lewisburg, Pennsylvania.  (Exhibit # 23 ommitted)

42.    Medical staff at Allenwood Federal Prison Camp failed to submit prior reports for comparison which were available, but not submitted.  This was indicated in the reports comment section of the report.  (Exhibit #24 ommitted)

43.    On January 16, 2001, Smith refused to go out of the Institution for an appointment for examination due to his fearing an altercation with a correctional officer whom had been hassing inmates for no reason.  Smith requested to be re-scheduled to been seen by the neurosurgeon for consultation.

-11-

44.   On February 6, 2001, Smith reported to Health Services with lower back pain.  Was given medical idle for (3) days bed rest.  No treatments or medications provided.  (Exhibit # 25 omitted)

45.   During the month of January 26, 2001, Smith received a Memorandum from Henry J. Sadowski, Regional Counsel informing him that his Tort Claim was denied, and that he had (6) months from the date of the Memorandum  to file his complaint and to bring action in the United States District Court. (Exhibit #26 ommitted)

46.   On March 3, 2001, Smith submitted a cop-out to Health Services requesting whether or not he had been scheduled to be seen by the neurologist for the surgery consultation.  It was communicated by the neurologist to Dr Karpin, that Smith now needs corrective surgery.

47.   On April 2, 2001, Smith reported to Health Services having lower back pain.  Was examined by Lin C. Heath (PA) whom given him a medical idle for (3) days bed rest.  No treatments or medications were provided.  (Exhibit #30 omitted)

48.   On April 24, 2001, Smith returned to Health Services with back and leg pain.  Was given medical idle by Lin Heath (PA). No treatments nor medications provided.  (Exhibit #31 ommitted)

49.   As of May 1, 2001, Smith has not been re-scheduled for surgery consultation nor has he received treatments or medications for his lower back condition which he still suffers.

## CLAIMS

## FIRST CAUSE OF ACTION

50.    The actions of defendants stated in paragraphs 13 through 49, breached its duty to provide adequate medical care through negligence and neglect to a prisoner and in violation of established Bureau of Prisons policy.

51.    The actions of defendants stated in paragraphs 13 through 49, failed to provide adequate care in the treatment of plaintiff's serious medical needs, subjecting plaintiff to cruel and unusual punishment in violation of federal law and the Eighth Amendment.

52.    Plaintiff's Eighth Amendment right against the infliction of cruel and unusual punishment was violated when:

> (a) Bureau of Prisons medical personnel committed medical malpractice by neglecting to provide plaintiff with recommended treatments from examining doctors and to provide adequate medical care to prevent further risk to health.

> (b) Bureau of Prisons breached duty to Plaintiff by failing to give him adequate pain medication continuing after injury in Unicor, when plaintiff fell while working within the scope of his prison work assignment.

(c) Bureau of Prisons inflicted cruel and unusual
punishment upon plaintiff by disregarding his
complaints concerning medical personnel failure
to provide pain medications and neglecting to
provide treatments as was recommended by doctors.

(d) Bureau of Prisons medical personnel breached its
duty everytime they issued a medical idle for
bed rest telling plaintiff to lay down and suffer.

(e) Bureau of Prisons medical personnel and prison
officials were both deliberate indifference to
plaintiff's medical needs wherein the medical
malpractice was a substantial factor in bringing
about the aggravation of the preexisting injury
due to plaintiff's being forced to work with their
having full knowledge of his physical disabilities.

## SECOND CAUSE OF ACTION

53.    The actions stated in paragraphs 13 through 49,
violated federal law.

54.    Plaintiff alleges that defendants violated federal
law when:

(a)    Bureau of Prisons medical personnel's refusal
to provide medications for pain and treatments for plaintiff's
serious medical needs which violated Bureau of Prisons Program
Statement 6000.05, which provides that "the health care
mission of the Federal Bureau of Prisons is to provide necessary
medical, dental, and mental health services to all inmates by

-14-

professional staff, consistent with acceptable community stadards".

55.     (b)  Bureau of Prisons medical personnel violated Bureau of Prisons Program Statement 6000.05, Chapter II, Health Care Standards, which provide that Level 2 (presently medically necessary) and defined as "routine care or treatment that cannot be reasonably delayed without the risk of further complications, serious deterioration, significant pain or discomfort, provided to maintain a chronic or non-life threatening condition.

(c)  Bureau of Prisons also violated Federal Statute upon which they are obligated to provide treatments to Federal inmates whom must depend on them for treatments of serious medical problems and if they do not provide the treatments to inmates health problems, the health problems will not be met.

## RELIEF

**WHEREFORE,** plaintiff requests this Honorable Court grant the following relief:

A.  Issue a declaratory judgment that defendants violated federal law and the United States Constitution when they:

1) subjected plaintiff to inadequate medical care.

2) Exhibited a deliberate indifference to plaintiff's serious medical needs.

3) Were negligent by failing to exercise that degree of care usually exercised in the medical profession.

-15-

4) Failed to follow recommendations from examining doctors whom advised medical personnel to provide treatments.

5) in violation of established Bureau of Prisons policy caused plaintiff's pain and suffering.

6) failed to provide some sort of treatments leaving surgery as the last option.

B.   Grant compensatory damages in the following amounts.

1) $ 250,000.00 against defendant United States of America.

2) $ 250.000.00 against defendant Federal Bureau of Prisons.

C.   Grant punitive damages in the amount of double compensatory damages requested from each defendant.

D.   Grant such other relief as it may appear Plaintiff is entitled.


_____
Jerome Smith, Plaintiff

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

_Jerome Smith_
Jerome Smith  May 10, 2001

EXHIBITS

EP-S187.058    **PROGRESS REPORT** CDFRM
Fæ 94

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

| Institution<br>FCI Fort Dix, NJ | Date<br>01-19-2000 |
|---|---|

| *Jerome Smith* | Inmate Reviewed | |
|---|---|---|
| Inmate's Signature<br>SMITH, Jerome | Date<br>01-19-2000 | Staff Signature<br>Laura A. Mason |

## 1. Type of Progress Report

| Initial | Statutory Interim | Pre-Release |
|---|---|---|
| Transfer | X Triennial | Other_____ |

| 2. Inmate's Name<br>SMITH, Jerome | 3. Register Number<br>19145-018 | 4. Age (DOB)<br>41(04-09-1958) |
|---|---|---|

5. Present Security/Custody Level
Low Security/In Custody

6. Offense/Violator Offense
False Statement in Connection with Acquisition of a Firearm

7. Sentence
100 Months 3559 SRA Sentence with 3 Years of Supervision to Follow and
a $100.00 Felony Assessment

| 8. Sentence Began<br>09-16-1996 | 9. Months Served<br>37 + 337 days JCT | 10. Days GCT/or EGT/SGT<br>162 GCT |
|---|---|---|
| 11. Days FSGT/WSGT/DGCT<br>0/0/0 | 12. Projected Release<br>01-17-2003 GCT | 13. Last USPC Action |

14. Detainers/Pending Charges
There are no known pending detainers or charges.

15. Co-defendants
Refer to PSI

For Continuation Pages, type on a blank sheet with the Inmate's Name,
Register No., and Date and attach to this form.

Record Copy - Inmate File; copy - U.S. Probation Office; copy - Parole Commission Regional Office (If applicable); copy -
Inmate (This form may be replicated via WP) Replaces all BP-CLASS-3 and BP-187(58) of NOV 90

Exhibit # 1

# PROGRESS REPORT

NAME: SMITH, Jerome          REG.: 19145-018       DATE: November 5, 1999

16. **INSTITUTIONAL ADJUSTMENT**: Mr. Smith has displayed a satisfactory
adjustment to incarceration.  He has received one incident report during
his incarceration on April 16, 1996.  His contact with staff and inmates
has been appropriate.

A.  **PROGRAM PLAN**: Mr. Smith arrived at FCI Fort Dix, New Jersey, on
September 30, 1996, for his Initial Classification.  The Unit Team
recommended he participation in the Financial Responsibility Program (FRP),
the General equivalency Diploma Program (GED), Correctional Counseling
Groups, Alcoholics Anonymous (AA) and that he be assigned to an appropriate
work detail.  In addition, Mr. Smith has initiated a program to inform
other veteran inmates of rights and entitlements.

B.  **WORK ASSIGNMENT**: Mr. Smith is currently assigned to UNICOR Business
Office where he receives satisfactory work reports from his detail
supervisor.

C.  **EDUCATIONAL/VOCATIONAL PARTICIPATION**: Mr. Smith's records indicate he
completed the GED program on November 22, 1996.  In addition, he has
completed the Parenting Program, Fat Assessment and ACE Essay.

D.  **COUNSELING PROGRAM**: Mr. Smith has completed the 40 hour drug program.

E.  **INCIDENT REPORTS**: Mr. Smith has received the following incident report
during his current confinement:

| DATE | INCIDENT/CODE | DISPOSITION |
|------|---------------|-------------|
| 04-16-1996 | 203/Threatening Bodily Harm | DHO: 30 Days Loss of Visiting Privileges |

F.  **INSTITUTIONAL MOVEMENT**: Mr. Smith was initially designated to FCI
Butner on January 3, 1996, for Psychiatric Study.  He was then transferred
to FCI Fort Dix on September 30, 1996, for service of his sentence.  There
has been no further institutional movement.

G.  **PHYSICAL AND MENTAL HEALTH**: Mr. Smith is assigned regular duty status
with medical restrictions of no prolonged standing, and no lifting over 15
pounds.  File materials indicate there is a history of depression and
attempted suicide.  Additionally, Mr. Smith has a long history of drug
abuse (particularly cocaine).  Mr. Smith has also been diagnosed with PTSD,
mood swings and insomnia.  Furthermore, according to Dr. Ronald M. Drasnick
of the Rancocas Medical Arts Building (Orthopedic) Mr. Smith's MRI recently
revealed that he was diagnosed with Lumbar disc disease which causes canal
stenosis and bilateral neuroforaminal stenosis.  He also has a herniated
disc on the right deforming the thecal sac, impinging on the right nerve
root.  The aforementioned condition allows Mr. Smith to only perform work
within the institution allows him to remain in a seated.

# PROGRESS REPORT

**NAME**: <u>SMITH, Jerome</u>       **REG.**: <u>19145-018</u>      **DATE**: <u>November 5, 1999</u>

H.  **PROGRESS ON FINANCIAL RESPONSIBILITY PLAN**: At the time of sentencing,
Mr. Smith was responsible for a $100.00 Felony Assessment Fee.  All of the
financial obligations are paid in full.  Mr. Smith is not responsible for
the Cost of Incarceration Fee (COIF).  Mr. Smith has no other financial
obligations of issue.

17.  **RELEASE PLANNING**: Mr. Smith is a legal resident of Lakeland, Florida
Upon his release he intends to reside in Florida with his family.


A.  **Residence**:           5600 Old Tampa Hwy.
                          Lakeland, Florida 32501

B.  **Employment**:           To be determined.

C.  **CUSPO**:
    **(Sentencing)**          Barry M. Polsky, CUSPO
                          United States Probation Office
                          Eastern District of Pennsylvania
                          Federal Office Building
                          600 Arch Street, Suite 2400
                          Philadelphia, PA 19106-1679

D.  **Relocation**:           N/A


E.  **Release Preparation Program**: Mr. Smith is scheduled to participate in
the Release Preparation Program.  He has elected to participate in the
following programs: Computer VT, Social Security Administrator, and Stress
Management.

"Offender is subject to notification under 18 U.S.C. 4042 (b).

18.  **DICTATED BY**:    _L. A. Mason_____    DATE: 01-19-2000
                     L. A. Mason, Case Manager

19.  **DATE TYPED**:    <u>January 19, 2000</u>

20.  **REVIEWED BY**:    _E. mckinnon_____    DATE: 01-19-2000
                     Eric Mckinnon
                     Unit 1 Manager

06/19/93

| **Veterans Administration** | | **MEDICAL CERTIFICATE** |
|---|---|---|

| 1. APPLICANT'S NAME | 2. SEX | 3. TYPE OF BENEFIT APPLIED FOR: |
|---|---|---|
| SMITH, JEROME | M | OUTPATIENT MEDICAL |

**4. OTHER NAMES USED (ALIAS)**

ELIGIBILITY: 5 V

ENTITLEMENT: HOSP ANY CONDITION OPT CARE IF REQUIRED TO OBVIATE HOSPITALIZATION

| 5. SOCIAL SECURITY NO. | 6. CLAIM NO. | 7. DATE OF BIRTH | 8. AGE |
|---|---|---|---|
| 165523952 | | 04091958 | 35 |

COMPETENT: 0  A/DI 1  ION: 1  POW: 1

| 9. LOCATION OF CLAIMS FOLDER | 10. PLACE OF BIRTH |
|---|---|
| 310 | PHILA. PA. |

COMPLAINT: BACK PAIN

| 11. REGULAR PHYSICIAN | 11a. REGULAR PHYSICIAN'S PHONE | 12. RELIGIOUS PREFERENCE | 13. SPINAL CORD INJURY |
|---|---|---|---|
| | | METHODIST | X |

| 14. PERMANENT ADDRESS AND PHONE NO. | 15. TEMPORARY ADDRESS AND PHONE NO. |
|---|---|
| 521 DUDLEY ST. PHILA.     PA    19140 215-463-6525 | FROM          TO |

DO YOU HAVE AN ADVANCE DIRECTIVE? N     IF NO, DO YOU WANT AN ADVANCE DIRECTIVE? N

**16. BENEFITS / DISABILITIES**
%
%
%
%

| 17. FIRST CONTACT IN AN EMERGENCY | RELATIONSHIP | 18. SECOND CONTACT IN AN EMERGENCY | RELATIONSHIP |
|---|---|---|---|
| KIM    SMITH | WIFE | | |
| 521 DUDLEY ST. | HOME / WORK 215-463-6525 | | HOME / WORK |
| PHILA.    PA | | | |

| TRIAGE ASSESSMENT | TIME IN: | TIME OUT: | ALLERGIES: NKDA |
|---|---|---|---|

1450. Pt states that while changing
truck tire on Thurs- had severe
pain in lower back- was unable
to get up -temporarily- has not
slept in 2 days- radiates to ® leg
+® shoulder- pain constant-
ambulates c̄ difficulty. ⊖ numbness
-took med? c̄ no relief

ALLERGIES: NKDA

MEDICATIONS:
HTN Meds. captopril?

PMH.
HTN.
back problem.

D. Hurepka

| TIME | TEMP. | P | R | BP | WT | NURSING FLOWSHEET / PROGRESS NOTES |
|---|---|---|---|---|---|---|
| 1450 | | | | 199/98 | | |

| Time | MEDICATIONS Med. | Dose | Route | Site | MD / RN | INTAKE Time | Parenteral | Amount | OUTPUT Site | Urine / Other |
|---|---|---|---|---|---|---|---|---|---|---|
| 515 | Toradol | 3 mg | Im | LVA | Kuppko | | | | | |

5270103

PVAMC / SMS - IHS
10-10 M

## Veterans Administration

# MEDICAL CERTIFICATE
OUTPATIENT MEDICAL

| 1. APPLICANT'S NAME | | 4 | M | 2. SEX | 3. TYPE OF BENEFIT APPLIED FOR: A |
| SMITH , JEROME | | | | | |

ELIGIBILITY 5    HOSP ANY CONDITION OPT CARE
ENTITLEMENT IF REQUIRED TO OBVIATE
HOSPITALIZATION

| 4. SOCIAL SECURITY NO. | 5. CLAIM NO. | 6. DATE OF BIRTH | 7. AGE |
| 165523952 | | 04091958 | 33 |

8. ADDRESS
521 DUDLEY ST.
PHILA.        PA    19140
215-463-6525

COMPLAINT BACK PAIN/SPASM

9. PLACE OF BIRTH  PHILA. PA.

| 10. BENEFITS/DISABILITIES | NSC    000 % | 11. RELIGION | 12. MARITAL STATUS |
| % | % | METHODIST | MARRIED |
| % | % | | |
| % | % | | |

| 13. PERSON TO BE NOTIFIED IN CASE OF AN EMERGENCY | A. NAME AND ADDRESS  KIM    SMITH 521 DUDLEY ST. PHILA.        PA  19140 | B. TELEPHONE NO. 215-463-6525 14. REGULAR PHYSICIAN | C. RELATIONSHIP WIFE A. CONTACT |

TRIAGE ASSESSMENT    TIME IN:        TIME OUT:        ALLERGIES:

1855. C/o lower back pain ī's 3days ī rad to legs.    NKDA.
Pain is Not relieved by motrin at home.
Denies bowel or bladder problems. ? also.    MEDICATIONS:
requests Rx for antihypertensive. P able to    Capoten.
walks ē minimal difficulty. States ⊕ samon    Motrin.
bending or deep knee bending. Helen Schwinka

PMH
hernialed L4-L5 disc
HTN.

| TIME | TEMP. | P | R | BP | WT. | NURSING FLOW SHEET / PROGRESS NOTES |
| 1855. | 99.3 | 92 | 20 | 140/100 | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| MEDICATIONS | | | | | INTAKE | | | OUTPUT | |
| Time | Med. | Dose | Route | Site | MD/RN | Time | Parenteral | Amount | Site | Urine/Other |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

R.N. DISPOSITION  D/C'd to home ē        R.N. SIGNATURE

| T | ) ( P | ) ( BP 99/75 ( STATE OF CONSCIOUSNESS | ) ( ALLERGIES NKDA ) |
|---|---|---|---|

35 y/o b/m presents s/p backing 2 days ago

Pt has h/o L4 L5 S1 disc degen c̄ a protruding

disc posteriorly impinging on the ℝ nerve root

He was changing a tire 2 days ago

c̄ was a twisting inj to his back. For past

2 days he has been flat on his back.

Pain worse c̄ sitting, standing, pain shoots down

ℝ leg ⊕ radicular pain

PMH L4L5S1 disc degen    meds - ⊕ Captopril

Large b/m    HTN

⊕ distress

⊕ spinal tenderness over L2 → L5 region

⊕ ℝ straight leg test ⊕

motor strength intact

sensation intact

⊕

**LAB RESULTS:** – discussed c̄ ortho resident Dr Craythorne

**DIAGNOSIS** 1. herniated disc  2. _____  3. _____

**TREATMENT AND STANDING ORDERS:** Tordol 30mg IM

**TREATED AND DISCHARGED** ☑  **DISCHARGE DATE:** _____  **DISCHARGE TIME:** _____

**DISCHARGE CONDITION:** ☐ GOOD  ☐ SATISFACTORY  ☐ FAIR  ☐ POOR

☐ TRANSFERRED TO ANOTHER HOSP.    ☐ REFUSED MEDICAL AID    ☐ DOA

☑ Patient Instructions Given    ☐ Consult _____

☐ Request Copy of 1010M be sent to _____

Signature _____

15722

Print Name: _____

UNICOR FEDERAL PRISON INDUSTRIES INC.
LEAVENWORTH KANSAS

Exhibit # 3

U.S. DEPARTMENT OF JUSTICE

Federal Bureau of Prisons

**FEDERAL BUREAU OF PRISONS**
**INJURY REPORT – INMATE**

<div style="writing-mode: vertical-lr">Completed by Interviewing Supervisor</div>

| 1. Institution | 2. Name of Injured | 3. Register Number |
|---|---|---|
| F.C.I. FORT DIX | JEROME SMITH | 19145-018 |

| 4. Injured's Duty Assignment | 5. Injured's Duty Hours | 6. Date and Time of Injury |
|---|---|---|
| CLERK | 7:30AM TO 3:30PM | 12/10/1998 10:30AM |

| 7. Where Did Injury Happen (be specific as to location) | 8. Date and Time Injury Was REPORTED |
|---|---|
| UNICOR BUSINESS OFFICE    5707 2ND FLOOR | SAME AS ABOVE |

9. In Your Opinion, Was This Injury: (a) ☒ Work Related   ☐ Non Work Related

(b) ☐ Institution   ☐ Industry   ☐ Recreation   ☐ Program or Activity

☐ Other (explain)   WAS WORKING WITHIN THE SCOPE OF PRISON EMPLOYMENT

| 10. To Whom Was Injury First Reported | 11. Part of Body Involved (left knee, etc.) | 12. Kind of Injury (burn, cut, etc.) |
|---|---|---|
| N. BROWN | LEFT KNEE--LOWER BACK | AGGRAVATION OF PRE-EXISTING INJURY |

13. Injured's alleged Witnesses to Injury (staff and inmates)

STAFF AND 20 INMATES

14. Injured's Brief Statement as to How Injury Happened. Include Injured's Recommendation for Prevention. (Continue on additional blank sheets, if necessary.)

SLIP ON FLOOR IN UNICOR BUSINESS OFFICE FALLING OVER A DESK HITTING LEFT KNEE & LOWER BACK FURTHER INJURING LOWER BACK (Pre-Existing Injury).

● Injured's Signature and Date: *Jerome Smith 5/5/00*

15. Supervisor's Statement — Must include: a. Last Safety Talk Given, b. Safety Equipment Provided, c. Whether Safety Equipment in Use, d. Whether Proper Guarding Used, e. Corrective Action Taken. (Continue on additional blank sheets, if necessary)

*ON December 10, 1998 at approx. 10:30 Am, Inmate Smith reg# 19145-018 fell on the floor. As he was falling he fell into a desk and the desk broke. Smith was sent to the Duty P.A.*

● Supervisor's Signature, Title and Date: *N. Brown 5/5/00*

| 16. Medical Description of Injury (refer to BP–Adm 73) | 17. This Injury Required: |
|---|---|
| (SEE ATTACH MEDICAL REPORT) | a. ☐ No Medical Attention<br>b. ☐ Minor First Aid<br>c. ☐ Hospitalization — from _____ to _____<br>d. ☒ Work Time Lost — from _____ to _____<br>e. ☒ Other (explain)<br>Total Lost Time Days: *(See: Attach sheet)* |

<div style="writing-mode: vertical-lr">Completed by Safety Manager</div>

18.

**COMPUTER CODING**

Inst. Code     Reg. No.          Name (Last, First, MI)

| | | | | | | | | | | | | | | | | | | | |
|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|--|

Date of Inj. (mo-da-yr)        Dept.        Area        Machine        Body Part        Source

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**INMATE INJURY ASSESSMENT AND FOLLOWUP**
*(Medical)*

| 1. Institution FCI Fort DiX E | 2. Name of Injured Smith, Jerome | 3. Register Number 19145 - 018 |
|---|---|---|

| 4. Injured's Duty Assignment Unicor | 5. Housing Assignment 5702 | 6. Date and Time of Injury 12/10/98  1420 |
|---|---|---|

| 7. Where Did Injury Happen (Be specific as to location) Unicor 5707 mat tool | Work Related? ☑ Yes ☐ No | 8. Date and Time Reported for Treatment 12/10/98  1530 |
|---|---|---|

**9. Subjective:** *(Injured's Statement as to How Injury Occurred)(Symptoms as Reported by Patient)*

Patient states that he slipped & fall hitting his back & knee (L). No loss of conscious-ness. Has Ht of Herniated Disc

*Jerome Smith*
Signature of Patient

**10. Objective:** *(Observations or Findings from Examination)*        X-Rays Taken ____  Not Indicated ____

NAD, A&O X3, Ambulatory        X-Ray Results

BP. 150/90 mm Hg. p. 70/s. rr. reg.

lumbar area: no inflammation, no bruise discoloration, with old surgical scars noted. (+) ROM but severe tenderness.

**11. Assessment:** *(Analysis of Facts Based on Subjective and Objective Data)*    (L) Knee: no inflam, no bruise discoloration, (+) full ROM, no cut or abrasions noted

LBP

(L) Knee pain    Soft Tissue Injury

**12. Plan:** *(Diagnostic Procedures with Results, Treatment and Recommended Follow-up)*

1) L-spine series ordered & taken. Ice wrapped given.
2) Ibuprofen 600 mg. - tab tid x 7 days #21 with food
3) Flexeril 10 mg - tab tid x 3 days # 9. No weight bearing on (L) knee
4) No strenuous activity. Medical Idle given for one day. follow-up in sick call if pain & inflam persist. He understood.

**13. This Injury Required:**

☐ a. No Medical Attention
☐ b. Minor First Aid
☐ c. Hospitalization
☐ d. Other (explain)

_Idle_

☐ e. Medically Unassigned
☐ f. Civilian First Aid Only
☐ g. Civilian Referred to Community Physician

S. Synjongian
Mid-Level Practitioner
FCI Fort Dix
Signature of Nurse or Physician Assistant



A. VALE...
MEDICAL OFFICER
FCI F. DIX

Exhibit # 5

Original – Medical File
Canary – Safety
Pink – Work Supervisor *(Work related only)*
Goldenrod – Correctional Supervisor

USP LVN

Self Carboned Form - If ballpoint pen is used, PRESS HARD

Printed on Recycled Paper

BP-362(60)
FEBRUARY 1986

Spine Surgery
Foot and Ankle Surgery
Ronald M. Krasnick, M.D.
Joint Replacement
Arthroscopic Surgery

Trauma & Reconstruction
Sports Medicine
Andrew B. Sattel, M.D.
Hand and Upper Extremity

June 16, 1999

RE: JEROME SMITH

Federal Corrections Institute – East
P. O. Box 38
Fort Dix, NJ  08640

To Whom It May Concern:

He complains of backache radiating into both his legs.

Backache dates back to 1984, when he fell off a ladder. Since that time, backache has been present on and off, and in 1994, he was put on disability for his back. He indicates that pain has been particularly severe since he changed a tire while at Fort Drum in 1993. This was on a five ton truck.

He denies bladder or bowel problems, but complains of chronic pain with soreness in both his legs, the right more so than the left.

Objectively, he is 6' 1" tall and weighs in excess of 270 pounds. He walks holding a cane in his right hand. He cannot stand independent on his toes and heels and has marked limitation of forward flexion. Straight leg raising is positive bilaterally. He appears intact neurologically.

Plain X-Rays are described as normal. Two MRI reports are included in the chart. A study done in 1992 by Philadelphia Magnetic Imaging Limited documents disc degeneration at L4-5 and L5-S1 with a protruding disc posteriorly and to the right, possibly impinging on the right S1 nerve root. The MRI from the same facility done November 3, 1998 indicates a moderate-sized central herniation of the L4-5 disc, which is not compressing the thecal sac. A small central protrusion of the L5-S1 disc is also documented.

DIAGNOSIS: Chronic lumbar disc syndrome with herniations at L4-5 and L5-S1.

RECOMMENDATION: Activity modification including systematic weight loss. It would be advantageous to obtain the actual films done in Philadelphia for personal review. Treatment should be strictly symptomatic.

Sincerely,

RMK:meg

Ronald M. Krasnick, M.D.

Exhibit # 9



# Orange Radiology Associates, P.C.

| MRI of Newburgh | MRI of Orange | MRI of Port Jervis |
|---|---|---|
| 320 Robinson Avenue | 505 Route 208 | at Mercy Community Hospital |
| Newburgh, NY 12550 | Monroe, New York 10950 | Port Jervis, NY 12771 |
| (914) 565-3664 Fax (914) 565-3617 | (914) 783-3444 Fax (914) 783-9561 | (914) 858-5265 Fax (914) 858-5657 |

X-RAY • CT • US • MAMMOGRAPHY • OSTEOPOROSIS EVALUATION • MRI

Dr. Sleavin - Clinical Director
Health Services - FCI Ft. Dix
Box 5000
Fort Dix, New Jersey  08640

August 24, 1999

RE: Jerome Smith
DOB: 4-9-58
ID #19145-018
MRI of the Lumbar Spine
8-17-99

Dear Dr. Sleavin:

Thank you for referring this patient for the above examination.

MRI OF THE LUMBAR SPINE:
Sagittal T1 and T2 weighted sequences as well as axial gradient echo and T2 weighted sequences are being evaluated.

The vertebral body height and intervertebral disc space height is well maintained at all levels. Degenerative disc disease is seen at the L4-L5 and L5-S1 levels, which is manifested by disc desiccation.

At the L4-L5 level there is broad based disc bulging as well as mild facet overgrowth and ligamentum flavum hypertrophy.  These findings in concert are causing mild central canal stenosis as well as bilateral neural foraminal stenosis.

At the L5-S1 level there is a right paracentral-right lateral recess disc herniation, which is causing deformity of the right ventral lateral aspect of the thecal sac as well as mild right neural foraminal stenosis. The conus medularis is situated behind the T12-L1 level and is normal. The paraspinal soft tissues are also normal.

IMPRESSION:
At the L4-L5 level there is degenerative disc disease and broad based disc bulging. In addition, there is facet overgrowth and ligamentum flavum hypertrophy.  These findings in concert are causing mild central canal stenosis and bilateral neural foraminal stenosis. At the L5-S1 level there is a right paracentral-right lateral recess disc herniation, which is causing deformity of the ventral thecal sac and possible impingement upon the descending right S1 nerve root.  There is also partial compromise of the right neural foramen.

Sincerely,

Robert Greco, M.D.
Harvey M. Peck, M.D.

RG-HMP:jm

A. VAL_____ M.D.
MEDICAL _____R
FCI FT. DIX

Exhibit # 12

## Rancocas Orthopedic Associates

Rancocas Medical Arts Bldg.
220 Sunset Road
Suite 3A
Willingboro, NJ 08046
(609) 871-5900
FAX (609) 871-9301

1288 Route 73 South
Suite 100
Mt. Laurel, NJ 08054
(856) 914-1111
FAX (609) 871-9301

Irving P. Ratner, M.D.
*Spine Surgery*
*Foot and Ankle Surgery*

Ronald M. Krasnick, M.D.
*Joint Replacement*
*Arthroscopic Surgery*

Bruce W. Wulfsberg, M.D.
*Trauma & Reconstructive*
*Sports Medicine*

Andrew B. Sattel, M.D.
*Hand and Upper Extremity*

September 22, 1999

FCI
P.O. Box 38
Fort Dix, NJ 08640

RE: SMITH, Jerome

#19145-018

Mr. Smith had an MRI performed on August 24, 1999. This study is grossly abnormal. The L4-5 disc is bulging centrally. This is causing central canal stenosis and bilateral neuroforaminal stenosis. At L5-S1, he has a herniated disc on the right deforming the thecal sac and also impinging on the right S1 nerve root.

<u>Diagnosis</u>: Lumbar disc disease at L4-5 and L56-S1.

<u>Recommendation</u>: At this point in time, he should be evaluated by Dr. Ratner in terms of whether or not more aggressive management may be necessary.

RONALD M. KRASNICK, MD

/pwp-s
cc: Irving Ratner, MD

**Addendum:** Clinically Mr. Smith is unchanged subjectively and objectively. Ramifications associated with this were discussed in detail. He will be scheduled for evaluation independently by Dr. Ratner and will bring the current MRI films of August 24, 1999 with him for evaluation.

Exhibit # 13



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

---

*U.S. Custom House - 7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

August 11, 2000

Jerome Smith, Register No. 19145-018
FPC Allenwood
P.O. Box 1000
Montgomery, PA 17752

Re: Administrative Tort Claim Dated August 3, 2000
    Claim No. TRT-NER-2000-02253

Dear Mr. Smith:

This will acknowledge receipt on August 7, 2000, of your
administrative tort claim for alleged personal injury suffered at FCI
Fort Dix, on or about December 10, 1998.

Under the provisions of the Federal Tort Claims Act, 28 U.S.C. 2675,
we have six months from the date of receipt to review, consider, and
adjudicate your claim.  Accordingly, you may expect to hear from us on
or before February 3, 2001.

All correspondence regarding this claim should be addressed to me at:
Federal Bureau of Prisons, Northeast Regional Office, Room 801, US
Custom House, 2nd & Chestnut Street, Philadelphia, Pennsylvania
19106.  If you have any questions about the status of your claim or if
the circumstances surrounding this claim change in any fashion, you
should contact me immediately.  Also, should your address change, you
should advise me accordingly.

Sincerely,

Henry J. Sadowski
Regional Counsel

cc: File

Exhibit # 19

12/20/00  02:58 PM EST     VIA VSI-FAX                    Page 1 of 2 #310417

19145-018



**Susquehanna**
**Valley**
**Imaging**

SUSQUEHANNA VALLEY
IMAGING
Silver Moon Business Center
933 Zeigler Road
Lewisburg, PA 17837
(570) 522-9300
(888) 522-5540

Services
Open MRI
Computed Tomography
Mammography
Ultrasound
X-Ray

Professional Services
Provided By Tristan
Associates
Jinan O. Bahia, M.D.
Joseph D. Bellissimo, M.D.
Brian P. Bloom, M.D.
Dean M. Brockmole, M.D.
Stacy J. Castaldi, D.O.
Milton A. Friedlander, M.D.
Mark A. Guenin, M.D.
James R. Hills, M.D.
Joachim J. Huerter, M.D.
Judith A. Josefiak, M.D.
Michael J. Mandell, M.D.
Albert R. Porter, M.D.
Donald J. Schnapf, D.O.
James W. Warren, M.D.
Scott W. Wise, M.D.

Affiliated Offices
TRISTAN ASSOCIATES
4518 Union Deposit Road
Harrisburg, PA 17111
(717) 652-5840
(888) 452-5840
Fax (717) 652-8152

32 Northeast Drive
Suite 101
Hershey, PA 17033
(717) 533-1736
Fax (717) 534-1307

WOMEN'S IMAGING
CENTER
4518 Union Deposit Road
Harrisburg, PA 17111
(717) 652-1438
(888) 452-5840

| PATIENT NAME | ACCOUNT NO | SSN |
|---|---|---|
| JEROME SMITH | 78474 | 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 |

| AT THE REQUEST OF | DATE OF BIRTH | AGE/SEX | DATE OF SERVICE |
|---|---|---|---|
| LEON BIGLETE MD | 04/09/1958 | 42/M | 12/20/2000 |
| FPC ALLENWOOD | | | |
| P O BOX 1000 | | | |
| MONTGOMERY PA 17752 | | | |

12/20/2000: 072148 MRI L-SPINE

**HISTORY:**    42 year old male with low back pain. Patient had history of fall in 1984. Patient reports a known HNP at L4-5.

**TECHNIQUE:**    SCOUT
SAGITTAL: T1, T2
TRANSVERSE: T2, T1, CISS

*Leon T. Biglete, MD*
*Medical Officer*

**COMMENTS:**    There are no prior studies available for comparison.

The lumbar spine is in anatomic alignment. There is normal signal intensity within the marrow spaces. The vertebral body heights are well maintained. The conus medullaris is normal in appearance and position. There is moderate decreased hydration of the L4-5 and L5-S1 disc spaces consistent with degenerative change. The remainder of the disc spaces are well hydrated.

The T12-L1, L1-2, and L2-3 disc spaces are normal.

L3-4: There is mild to moderate degenerative hypertrophy of the facets and ligaments of in flavum, but without evidence of significant compromise of the spinal canal or neural foramen.

L4-5: There is a mild concentric disc bulge present. There is a small right posterior broad based HNP superimposed upon this disc bulge. There is also mild to moderate degenerative hypertrophy of the facets and ligament in flavum. The combination of the disc processes and the facet arthropathy is producing a mild central spinal stenosis as well as moderate narrowing of the right lateral recess and mild narrowing of the left lateral recess. There is mild inferior neural foraminal narrowing bilaterally, but without evidence of high grade encroachment upon the L4 nerve roots.

L5-S1: There is a small to moderate broad based right posterior/right foraminal HNP. This HNP is largely responsible for a moderate stenosis of the right lateral recess at this level. There is no significant degree of central stenosis or narrowing to the left lateral recess. There is some inferior neural foraminal narrowing seen bilaterally, but without evidence of significant encroachment upon the L5 nerve roots.

| | |
|---|---|
| Patient: | JEROME SMITH |
| Soc. Sec. #: | 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 |
| D.O.B.: | 04/09/1958 |
| Account #: | 78474 |

Continued: Page 2 of 2

**SUSQUEHANNA VALLEY IMAGING**
Silver Moon Business Center
933 Zeigler Road
Lewisburg, PA 17837
(570) 522-9300
(888) 522-5540

**Services**
Open MRI
Computed Tomography
Mammography
Ultrasound
X-Ray

**Professional Services Provided By Tristán Associates**
Jinan O. Bahia, M.D.
Joseph B. Bellissimo, M.D.
Brian P. Bloom, M.D.
Dean M. Brockmole, M.D.
Stacy J. Castaldi, D.O.
Milton A. Friedlander, M.D.
Mark A. Guerin, M.D.
James R. Hills, M.D.
Joachim J. Huerter, M.D.
Judith A. Józefiak, M.D.
Michael J. Mandell, M.D.
Albert R. Porter, M.D.
Donald J. Schnopf, D.O.
James W. Warren, M.D.
Scott W. Wise, M.D.

**Affiliated Offices**
TRISTÁN ASSOCIATES
4518 Union Deposit Road
Harrisburg, PA 17111
(717) 652-5840
(888) 452-5840
Fax (717) 652-8152

32 Northeast Drive
Suite 101
Hershey, PA 17033
(717) 533-1736
Fax (717) 534-1307

WOMEN'S IMAGING CENTER
4518 Union Deposit Road
Harrisburg, PA 17111
(717) 652-1438
(888) 452-5840

**DIAGNOSIS:**

1. Mild central stenosis and bilateral lateral recess stenosis (right greater than left) at L4-5 due to a combination of a disc bulge, broad based small HNP, and facet arthropathy.
2. Broad based right posterior/foraminal HNP at L5-S1.

ELECTRONICALLY SIGNED
Scott W. Wise, M.D.
SWW/ra

Exhibit # 26

 

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVE OMB NO. 1105-0008 EXPIRES 4-30-88 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See Instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| U.S. DEPARTMENT OF JUSTICE<br>FEDERAL BUREAU OF PRISONS<br>NORTHEAST REGIONAL OFFICE<br>2nd Chestnut Street - Phila, Pa 19106 | Jerome Smith # 19145-018<br>FPC Allenwood Dorm A-A<br>P.O. Box 1000<br>Montgomery, Penna 17752 |

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH 04/09/1958 | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT December 10, 1998 | 7. TIME (A.M. OR P.M.) 10:30 AM |
|---|---|---|---|---|

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurence and the cause thereof) (Use additional pages if necessary.)*

    Basis of Claim: Breach of Duty on behalf of medical staff personnel at FCI Fort Dix, New Jersey; and FPC Allenwood which is the proximate cause of the Plaintiff's injuries. In addition, medical staff personnel has shown "deliberate indifference" to plaintiff's medical needs as was prescribed, by Doctor Ronald M. Krasnick, MD on September 22, 1999, at FCI Fort Dix, New Jersey. (See Attach Medical Report) dated 09-22-1999.

    Medical staff personnel at FPC Allenwood are showing the same conduct towards the Plaintiff's medical needs at this present date 08-03-2000. Therefore, the increase serious risk is being manifested by prison doctors.

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See Instruction on reverse side.)*

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

    Greatly Aggravated Pain, Weakness, Limitation of Motion, Impairment of Natural Function which results in permanent injury in which, Plaintiff is presently experiencing pain and suffering with mental anguish and great agony since the date of the injury 12-10-98.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* | |
| Ms N. Brown  Accountant<br>Dr. Ronald Krasnick, MD | F.C.I. Fort Dix, New Jersey 08640 P.O. Box 2<br>Rancocas Orthopedic Associates (See Attach)<br>Sheet | |

| 12. *(See instructions on reverse)* | AMOUNT OF CLAIM *(in dollars)* | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
| | $500,000 | | $500,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAI AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See Instructions on reverse side.)*<br>*Jerome Smith* | 13b. Phone number of signatory N/A | 14. DATE OF CLAIM 08-03-2000 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant shall forfeit and pay to the United States the sum of $2,000. plus double the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS<br>Fine of not more than $10,000 or imprisonment for not more than 5 years or both. *(See 18 U.S.C. 287, 1001.)* |
|---|---|

UNITED STATES GOVERNMENT

# Memorandum

### Northeast Regional Office, Philadelphia, PA
### FEDERAL BUREAU OF PRISONS

**DATE:** January 26, 2001

**REPLY TO**
**ATTN OF:** Henry J. Sadowski, Regional Counsel

**SUBJECT:** Your Administrative Tort Claim, No. TRT-NER-2000-02253

**TO:** Jerome Smith, Reg. No. 19145-018
FPC Allenwood

Your Administrative Tort Claim No. TRT-NER-2000-02253, dated
August 3, 2000, and properly received in this agency on August 7,
2000, has been considered for settlement as provided by the Federal
Tort Claims Act (FTCA), 28 U.S.C. § 2672, under authority delegated
to me by 28 C.F.R. § 543.30. You seek $500,000.00 in compensatory
damages for an alleged personal injury. Specifically, you claim
medical staff at the Federal Correctional Institution (FCI), Fort
Dix, New Jersey, and the Federal Prison Camp (FPC), Allenwood,
Pennsylvania, demonstrated deliberate indifference toward your
medical needs, resulting in permanent injury, pain and mental
anguish. You assert that this painful injury occurred on
December 10, 1998, while you were working in UNICOR.

After careful review of this claim, I have decided not to offer a
settlement. Investigation reveals that you came into custody with
the Federal Bureau of Prisons with an existing back injury which
occurred in 1984. This injury, according to medical records
available, resulted in a herniated disc. Medical records indicate
that you reported a fall at work on December 10, 1998, however,
there is no indication that this resulted in any further injury to
your back. You were evaluated by orthopedic consultants at FCI Fort
Dix and FPC Allenwood. It was the opinion of the orthopedic
consultants, until recently, that your treatment would be managed
without surgery. Your condition has recently demonstrated a need
for surgical repair. However, on January 16, 2001, you refused to
go to the appointment made for you with the neurosurgeon. You are
now expressing concerns about undergoing surgery. You fail to show
that negligence on the part of any Bureau of Prisons' employee has
resulted in your alleged personal injury.

Accordingly, your claim is denied. If you are dissatisfied with
this decision, you may seek reconsideration by this office or bring
an action against the United States in an appropriate United States
District Court within six (6) months of the date of this memorandum.

cc: Nancy Bailey, Warden, FCI Fort Dix
    Jonathan C. Miner, Warden, FPC Allenwood

Exhibit # 26