MCC:MEM:all/2001V00598

FILED
HARRISBURG

SEP 12 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH,
    Plaintiff    :    Civil No. 1:CV-01-1026

v.    :    (Judge Rambo)

UNITED STATES OF AMERICA,    :    (Magistrate Judge Smyser)
    Defendant

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR,
IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

### I. Introduction

Plaintiff is Jerome Smith, an inmate currently incarcerated at the Allenwood Federal Prison Camp in Montgomery, Pennsylvania. On June 8, 2001, Smith filed this complaint, naming as defendants the United States of America and Federal Bureau of Prisons. Smith's complaint contains a medical negligence claim under the Federal Tort Claims Act ("FTCA") and Bivens[1] claims.

By order of July 10, 2001, Smith's Bivens claims were dismissed, Smith's FTCA claim against the Federal Bureau of Prisons was dismissed, and the Clerk of Court was directed to remove the Federal Bureau of Prisons as a defendant. The only remaining claim is the FTCA claim against the United States.

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

On August 28, 2001, a motion to dismiss or, in the alternative, for summary judgment was filed on behalf of the United States. This brief is submitted in support of that motion in accordance with M.D. Pa. Local Rule 7.5.

## II. Statement of Facts

Smith is currently serving a 100-month sentence of imprisonment for a 1996 conviction in the United States District Court for the Eastern District of Pennsylvania, at No. 2:95-CR-00467-1, for false statement in connection with acquisition of a firearm, in violation of 18 U.S.C. §922(a).

Federal Bureau of Prisons ("BOP") records indicate that Smith entered into the custody of the BOP on November 8, 1995. Smith was housed at the Federal Correctional Center at Ft. Dix, New Jersey ("FCI Ft. Dix") from September 30, 1996, until June 30, 2000. Smith has been housed at FPC Allenwood from July 5, 2000, to the present.

Smith's instant complaint involves injuries Smith claims to have sustained on December 10, 1998, in the UNICOR[2] business office at FCI Ft. Dix. Smith was "working within the scope of prison employment" for UNICOR at the time he slipped and fell. Smith's complaint alleges negligent medical care following his December 10, 1998, slip and fall.

---

[2] UNICOR is the trade name of the Federal Prison Industries, Inc. a government corporation that employs inmates in federal prisons.

2

### III. Question Presented

Should Smith's complaint be dismissed in that federal prisoners cannot maintain actions under the FTCA for injuries arising out of alleged malpractice by doctors employed by the government in treating injuries incurred while working in prison industries?

Suggested answer in the affirmative.

### IV. Argument

Smith's complaint should be dismissed in that federal prisoners cannot maintain actions under the FTCA for injuries arising out of alleged malpractice by doctors employed by the government in treating injuries incurred while working in prison industries.

Any harm resulting from an injury while working is compensable *exclusively* under the Inmate Accident Compensation system ("IAC"). Aston v. United States, 625 F.2d 1210 (5th Cir. 1908)(Prison compensation law is the exclusive remedy for a federal prisoner injured while working, regardless of allegations of governmental negligence); Thompson v. United States, 495 F.2d 192 (5th Cir. 1974)(claim for work-related injury and subsequent medical malpractice not available to prisoner under FTCA; IAC provides sole remedy); Saladino v. Federal Prison Industries, 404 F. Supp. 1054 (D. Conn. 1975)(United States not liable under FTCA for additional damages incurred when prisoner allegedly aggravated his original work-related back injury because he was allegedly required to perform work beyond his physical capabilities).

The United States is not liable under the FTCA for any additional damages incurred when a prisoner allegedly aggravates the original work-related injury. Moore v. United States, 1988 WL 70025 (N.D.N.Y. 1988)(attached); Wooten v. United States, 825 F.2d

3

1039 (6th Cir. 1987); <u>Thompson</u>, <u>supra</u>;; <u>Saladino</u>, <u>supra</u>; <u>Byrd v. Warden, Federal Detention Headquarters</u>, 376 F. Supp. 37 (S.D.N.Y. 1974).

In <u>Saladino</u>, the inmate/claimant hurt his back while working at one federal institution and was subsequently transferred to another federal institution where he claims his original injury was aggravated by the negligence of prison staff who required him to perform work beyond his physical capabilities. The plaintiff sought damages for the alleged aggravation of the back injury. The district court granted defendant's summary judgment motion with respect to that claim, citing <u>Thompson</u> and <u>Byrd</u>. <u>Saladino</u>, <u>supra</u>, at 1058. In addition, in <u>Wooten</u>, the Sixth Circuit held that a prisoner's exclusive remedy for injuries he sustained when prison authorities assigned him to an inappropriate job, even though they knew about his back trouble, lay in IAC and not in a suit under the FTCA.[3] Thus, the United States is not liable under the FTCA for the aggravation of a work-related injury.

Smith alleges that he was assigned to work in UNICOR and that on December 10, 1998, he slipped on the floor in the UNICOR business office, "falling over a desk, and hitting his left knee and lower back on the floor." Smith's complaint, ¶¶8-9. Smith further states that the fall happened "while working within the

---

[3] Respondent notes that in <u>Wooten</u>, the Sixth Circuit upheld FTCA damages for improper medical care after the work-related injury. The facts of <u>Wooten</u> were particularly egregious with the inmate/claimant receiving clearly negligent and substandard care.

4

scope of his prison employment-assignment." Smith's complaint, ¶9. Smith's complaint. Thus, Smith cannot maintain this FTCA claim for injuries arising out of alleged malpractice by BOP doctors in treating these injuries incurred while working in UNICOR.

### V. Conclusion

WHEREFORE, for the reasons stated above, the complaint should be dismissed or, in the alternative, summary judgment granted in favor of defendant with a certification that any appeal would be deemed frivolous, lacking in probable cause, and not taken in good faith.

Respectfully submitted,

MARTIN C. CARLSON
United States Attorney

MARK E. MORRISON
United States Attorney

ANITA L. LIGHTNER
Paralegal Specialist
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108-1754
(717) 221-4482

Dated:    September 12, 2001

1988 WL 70025
(Cite as: 1988 WL 70025 (N.D.N.Y.))

Page 1

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

**William E. MOORE, Plaintiff,**
v.
**UNITED STATES of America, John T. Hadden, S. Hilbert, Dr. Ira Schecker and Thurman Robbins, Defendant.**

No. 85-CV-1151.

June 30, 1988.

Stuart Frum, Westport, N.Y., for plaintiff.

Frederick J. Scullin, Jr., United States Attorney Northern District of New York, Albany, N.Y. (Barbara D. Cottrell, Assistant U.S. Attorney, of counsel), for defendants.

*MEMORANDUM-DECISION AND ORDER*

MUNSON, Chief Judge.

*1 During the time he was incarcerated at the Federal Correctional Institute at Ray Brook, New York, plaintiff suffered injuries to his back and neck after slipping on an icy walkway. Plaintiff alleges that prison officials were initially unresponsive to his complaints of pain, and that when treatment for his injuries was ultimately undertaken, that treatment was performed negligently. In his amended complaint, plaintiff seeks to recover damages he claims resulted from the negligent acts of various government employees under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80, as well as redress for alleged violations of his eighth amendment rights under the constitutional tort theory of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971). The United States has moved pursuant to Rule 12(b)(1), Fed.R.Civ.P., to dismiss the FTCA claims for lack of subject matter jurisdiction.

I. BACKGROUND

During his confinement at Ray Brook, plaintiff was employed by the Federal Prisons Industries, Inc. ("FPI") and assigned to Ray Brook's plumbing shop detail. Plaintiff's employment duties included the installation, repair, and maintenance of all the institutional plumbing equipment. At approximately 9:45 a.m. on February 13, 1985, plaintiff and a fellow inmate employee were assigned by the shop foreman to do a "preventive maintenance check" on a urinal located in Building A, the prison's recreational facility. The plumbing shop, plaintiff's point of origin, is located in Building B, which is adjacent to Building A. Movement between Buildings A and B requires pedestrians to traverse an outdoor walkway which connects the two buildings. After obtaining the necessary work passes, plaintiff and his fellow worker exited the plumbing shop, and while enroute to Building A, plaintiff slipped on an icy patch of walkway, falling and landing on the back of his head and neck. After falling, plaintiff, with the assistance of his fellow inmate, continued on to Building A, where they reported the incident to the attending recreational supervisor. The supervisor in turn sent the pair to the prison hospital facilities where plaintiff, complaining of tenderness and pain at the base of his skull and muscle spasms in his neck, was given a perfunctory physical examination and then held over several hours for observation. Shortly after the accident, an injury report was completed by plaintiff's work detail supervisor, in which plaintiff endorsed a statement indicating that the accident occurred while plaintiff was on the way to "repair" the urinal.

Over the next several months plaintiff allegedly suffered through a long series of medical misadventures which eventually culminated in a severe aggravation of his initial injuries. [FN1] In his amended complaint plaintiff alleges that he visited the prison hospital on a daily basis complaining of severe pain and requesting further medical attention, which for the most part was denied. Other than the administering of pain medications, no further medical action was taken until plaintiff returned to the hospital complaining of numbness on the left side of his scalp. It was at this time that the prison doctor, defendant Ira Schecker, examined plaintiff and diagnosed plaintiff's injury as one involving nerve dysfunction, which in his estimation should be treated by placing plaintiff in traction. Defendant Schecker informed plaintiff that the prison hospital was not equipped for the treatments plaintiff required, and that the necessary equipment would have to be obtained from a local hospital.

Later that same day plaintiff was paged to the prison hospital where he was informed that he was to begin traction treatments immediately. Rather than waiting to obtain the requisite traction equipment from the

1988 WL 70025                                                                                                              Page 2
(Cite as: 1988 WL 70025, *1 (N.D.N.Y.))

local hospital, defendant Schecker decided to set up a make-shift traction device. This traction treatment consisted of having plaintiff sit in a chair, with the back of the chair resting against a door. A pulley was then attached to the top of the door and a rope was strung through the pulley. One end of the rope was fitted with a strap which was placed under plaintiff's chin, and this was then counter-balanced by one or two barbell weights attached to the opposite end of the rope.

*2 The record does not indicate the duration of each individual traction treatment, but does indicate that plaintiff received these treatments four times daily. Plaintiff alleges that the treatments caused him even more pain than that suffered prior to their administration and further alleges that none of the hospital personnel knew the proper procedure for placing a patient in traction. [FN2] Nonetheless, the treatments continued even though plaintiff complained of frequent headaches and deformation in his neck and back. Eventually, plaintiff was promised that he would be allowed to have a medical check-up by an orthopedic surgeon and that authorities at Ray Brook were in the process of setting up an appointment for plaintiff. On March 22, 1985, thirty-eight days after plaintiff's initial injury and approximately sixty traction treatments later, plaintiff was examined by a Dr. Dumond, who regularly visited the prison once every sixty days. After the examination, Dr. Dumond ordered a Philadelphia Brace for plaintiff's neck and also ordered that all traction treatments be discontinued. The doctor informed plaintiff at this time that his injury probably involved nerve dysfunction and that plaintiff should undergo extensive tests to determine the extent of the damage, if any.

Approximately two weeks later plaintiff noticed that whenever he attempted to raise his left arm to a ninety degree angle with his body, a large bump would appear on his shoulder. Alarmed by this development, plaintiff returned to the hospital the following day and requested that he be re-examined. After defendant Schecker examined plaintiff he told plaintiff that this was merely another muscle spasm. That same evening, plaintiff discovered that he could no longer lift his left arm because it was totally paralyzed. Once again, plaintiff reported his problem to prison medical personnel and once again he was promised that he would be allowed an outside visit to a specialist.

The deformity in plaintiff's back and neck area worsened as the weeks passed. Plaintiff was not re-examined until Dr. Dumond returned to the hospital on his regular visit sixty days after his initial examination of plaintiff. Once again, Dr. Dumond reiterated that plaintiff should undergo testing to resolve the extent of damage caused by the injury he had suffered in the slip and fall. Finally, on June 12, 1985, plaintiff was taken to a local hospital for the necessary tests. The examining doctor, however, forgot to bring along the equipment needed to complete the testing, and consequently the tests were rescheduled for a later date. Eventually, on June 24, 1985, the tests were completed and follow-up tests were administered on August 23, 1985. While waiting for Dr. Dumond to prescribe some sort of subsequent treatment, plaintiff filed suit in this court.

On March 20, 1985, after suffering the original injury as a result of his fall, and concurrent with the above-described medical treatment, plaintiff submitted a "Claim for Damages, Injury, or Death" with officials of the Bureau of Prisons. On April 23, 1985 David R. Essig, Regional Counsel, Northeast Region, Bureau of Prisons, sent a memorandum to plaintiff informing him because his injury was work-related, the Inmate Accident Compensation Act, 18 U.S.C. § 4126, was his exclusive remedy. Mr. Essig further informed plaintiff that his injury was not compensable under the FTCA.

*3 On May 6, 1985 plaintiff submitted a second "Claim for Damages, Injury, or Death" to the Bureau of Prisons. This claim was indentical to the first with the exception that plaintiff claimed that no "work" was being conducted when he was injured. Once again the agency notified plaintiff that the injury was work-related and that plaintiff's only alternative was to pursue a claim for compensation from FPI in accordance with the rules promulgated by that governmental entity, set out in 28 C.F.R. § 301 *et seq.* (1987). [FN3] Rather than file a claim for inmate accident compensation, however, plaintiff instituted this suit. In the first and second causes of action alleged in plaintiff's amended complaint, plaintiff asserts that agents of the United States were negligent in maintaining an icy walkway and in failing to provide proper medical treatment, thus aggravating his original injuries. Plaintiff's third cause of action, brought directly against FPI, was dismissed from the bench on March 31, 1986. The fourth and fifth causes of action allege *Bivens* claims against several individual defendants. The Government now moves to dismiss the first and second causes of action on the ground that the Inmate Accident Compensation Act

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

provides the exclusive remedy for the injuries plaintiff suffered.

## II. DISCUSSION

The Inmate Accident Compensation Act authorizes the Federal Prison Industries, Inc. to compensate federal prison inmates "for injuries suffered in any industry or in any work activity in connection with the maintenance or operation of the institute where confined." 18 U.S.C. § 4126. Under the regulations promulgated by FPI, compensation is strictly limited to "on the job" injuries. 28 C.F.R. § 301.9. In *United States v. Demko,* 385 U.S. 149 (1966), the Supreme Court held that § 4126 is the exclusive remedy for federal prisoners injured while performing an assigned employment task. The Court held that when a prisoner's injury is work-related, that person is precluded from seeking compensation under the FTCA. *See id.* at 152; *Saladino v. Federal Prison Industries,* 404 F.Supp. 1054, 1056 (D.Conn.1975). Section 4126 has also been held to be the exclusive remedy when a work-related injury is further aggravated by negligence or medical malpractice on the part of prison medical personnel. *See Wooten v. United States,* 825 F.2d 1039, 1044 (6th Cir.1987); *Thompson v. United States,* 495 F.2d 192, 193 (5th Cir.1974); *Byrd v. Warden, Federal Detention Headquarters,* 376 F.Supp. 37 (S.D.N.Y.1974).

With the support of depositions and affidavits, plaintiff argues that this court does not lack subject matter jurisdiction to hear his claims under the Federal Tort Claims Act because his injury was not work-related. It is plaintiff's contention that on the day in question, plaintiff and his fellow inmate were not on a work assignment, but rather, they were actually enroute to the gym for recreational weight lifting. According to plaintiff, the shop foreman frequently allowed plaintiff and other inmate workers assigned to the plumbing shop to go to the gym for recreational weight lifting when there was little or no work to be completed that day. The shop foreman lacked authority to do this. Plaintiff alleges that the shop foreman "covered" himself by claiming that he was sending the inmate workers on preventive maintenance checks. Plaintiff maintains that he stated that he was on work assignment in the initial injury report that was completed after plaintiff's fall because he too was trying to protect the shop foreman. Because the injuries sustained in the slip and fall are not work-related, plaintiff argues, the Inmate Accident Compensation Act is not a bar to the maintenance of the FTCA claims.

*4 Under the regulations implementing the Inmate Accident Compensation Act, an injured inmate is to submit to his work detail supervisor sufficient information to complete an injury report form within forty-eight hours of the accident causing the injury. 28 C.F.R. § 301.3. The work detail supervisor [FN4] is then charged with the responsibility of completing the injury report form, which is to contain a statement signed by the inmate concerning how the accident occurred. *Id.* § 301.4(a). [FN5] A copy of the report is provided to the injured inmate, and the report is forwarded to the institutional safety officer at the correctional facility where the inmate was injured. *Id.* If it appears that the injury suffered will result in time lost from the inmate's work assignment, the safety officer must submit the injury report and another completed administrative form to the Institute Safety Committee, which in turn must make a determination of the "work-relatedness" of the inmate's injury. *Id.* § 301.4(b). A copy of the Safety Committee's determination is to be provided to the injured inmate. *Id.* If the inmate wishes to contest the determination of the "work-relatedness" of his injury, he may appeal through the Administrative Remedy Procedure for Inmates, as set out in 28 C.F.R. § 542.10 *et seq.* and supplemented by the internal procedures established by the correctional institution in which the inmate is incarcerated. *See id.* § 301.10. [FN6] If the inmate wishes to file a claim for inmate accident compensation, on the other hand, he utilizes the procedures outlined in 28 C.F.R. §§ 301.12-25. [FN7] Although neither § 4126 nor its accompanying regulations confer jurisdiction upon the federal courts to review the correctness of findings made regarding his eligibility for inmate accident compensation, authority for judicial review can be found in the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq. See Thompson v. United States,* 492 F.2d 1082, 1084 (5th Cir.1984).

In the case at hand, plaintiff's supervisor completed an injury report form containing a statement signed by plaintiff describing how he slipped on a patch of ice on the walkway. Doc. 41, Exh. A. The Safety Committee determined that plaintiff's injury was considered work-related and plaintiff ultimately received notice that he had the right to file a claim under the Inmate Accident Compensation Act. [FN8] Instead of pursuing a claim under § 4126, however, plaintiff filed an administrative tort claim with the Bureau of Prisons (Northeast Region). Doc. 41, Exh. B. In that claim, plaintiff indicated that his injury occurred in the course of his prison

employment. Plaintiff was advised by the Bureau's Regional Counsel that plaintiff's proper recourse was through the inmate accident compensation system. Doc. 41, Exh.C. Plaintiff then filed a second administrative tort claim, this time asserting that he was not injured while "work was being conducted." Doc. 41, Exh. D. Plaintiff then commenced this lawsuit, seeking to challenge the issue of the work-relatedness of his injury.

*5 This court finds that plaintiff's failure to employ the provisions of the Administrative Remedy Procedure precludes him from relitigating the determination of the Safety Committee that plaintiff's injuries were work-related. Consequently his FTCA claims cannot be entertained by this court at this time. [FN9] Generally speaking, a party cannot challenge an action by a government actor or agency in the federal courts until he exhausts the administrative remedies available to him. *Myers v. Bethlehem Building Corp.*, 303 U.S. 41, 50-51 (1938). The purposes underlying the exhaustion doctrine are, *inter alia*, to avoid the premature interruption of the administrative process, to offer the administrative body an opportunity to develop a factual record open to judicial review, to allow for the correction of agency errors, if any, and to allow for the possibility that the review process may resolve the controversy. *McKart v. United States*, 395 U.S. 185, 193-95 (1969); *White v. Shull*, 520 F.Supp. 11, 13 (S.D.N.Y.1981). [FN10] Plaintiff, in attempting to challenge FPI's determination on the work-relatedness of his injury, is asking the court to bypass an established structure of administrative review without demonstrating that one of the recognized exceptions to the exhaustion doctrine is applicable. [FN11] Because the determination of the work-relatedness of plaintiff's injury is only an unappealed preliminary ruling, this court lacks the authority to overrule it. Since plaintiff is bound by that determination unless he utilizes the administrative procedures available to him to challenge it, he cannot recover under the FTCA.

### III. CONCLUSION

Plaintiff's failure to appeal the determination that his injuries were work-related precludes him from relitigating the issue here, and consequently bars his claims under the Federal Tort Claims Act. Therefore, defendants' motion to dismiss plaintiff's first and second causes of action is granted.

It is so Ordered.

FN1. According to his amended complaint, plaintiff suffers from gross deformities in his left shoulder and in the upper left portion of his back. In addition, plaintiff's left arm is paralyzed and of limited utility. The condition is apparently permanent and in medical terminology is known as a "winging of the scapula."

FN2. Plaintiff alleges that after undergoing many days of the traction treatments, plaintiff was informed by one of the physician assistants that all of the prior treatments had been improperly administered. The physician assistant apparently learned of the mistake after consulting a medical text on traction procedures. Plaintiff further alleges that Dr. Schecker did not oversee the administration of the traction procedure, but merely instructed his assistants on the methodology to be employed.

FN3. The Inmate Accident Compensation Act authorizes the Attorney General of the United States to promulgate rules and regulations for the processing of claims made under the Act. 18 U.S.C. § 4126. This authority has been delegated to FPI's Board of Directors. 28 C.F.R. § 0.99 (1987).

FN4. In this case, the "work detail supervisor" was Michael Bimonte, the plumbing shop foreman.

FN5. *See* Doc. 41, Exh. A.

FN6. The Administrative Remedy Procedure for Inmates, established by the Bureau of Prisons, "applies to all inmates confined in Bureau of Prisons institutions" who seek "formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. Though these procedures are not to be used for tort claims or inmate accident compensation claims generally, *id.* § 542.12, they are to be utilized for appeals of determinations of the "work-relatedness" of injuries as well as the rate at which lost-time wages are to be calculated. *Id.* § 301.10(e).

FN7. Under those procedures, the inmate's claim is first processed by a Claims Examiner appointed by the Commissioner

of FPI. If the inmate is dissatisfied with the determination made by the Claims Examiner, he may appeal to the Inmate Accident Compensation Committee, also appointed by FPI's Commissioner, and ultimately to the Associate Commissioner of FPI. *Id.* § 301.12-13, .20. In pursuing an appeal before the Inmate Accident Compensation Committee, the inmate may request a hearing, which is to be conducted pursuant to the procedures set out in 28 C.F.R. § 301.13- 301.19.

FN8. Though the record is not as clear as it should be, the deposition of plaintiff's expert, John William Wright, indicates that the Safety Committee made its determination of work-relatedness, though it is not clear that plaintiff was properly notified of this determination. Doc. 39 at 13-15. In an affidavit, plaintiff has denied ever receiving proper notification. Doc. 22, ¶ 22. In any event, plaintiff was put on notice of the Safety Committee's determination by the letter of Regional Counsel Essig. Doc. 41, Exh. C. There is also evidence that Ray Brook's facility manager was notified that plaintiff was entitled to inmate accident compensation at the rate of sixty-six and two-thirds percent of the hourly rate he ordinarily earned in his employ with FPI. Doc. 41, Exh. E; *see* 28 C.F.R. § 301.10(c).

FN9. The record does not indicate that plaintiff has received a final rejection of his tort claim from the Bureau of Prisons that comports with the requirements of 28 C.F.R. § 14.9, and thus the six-month statute of limitations for FTCA claims provided by 28 U.S.C. § 2401(b) apparently has not started to run. Though plaintiff may be time-barred from pursuing an appeal of the "work-relatedness" finding through the Administrative Remedy Procedures at this point, the court notes that those procedures contain some flexibility in allowing untimely complaints to be filed. *See* § 542.13(b). The court does not presume to speculate on whether plaintiff will be able to demonstrate a "valid reason for delay" in appealing the "work-relatedness" finding under the circumstances of this case.

FN10. The exhaustion requirement is incorporated into the APA. Section 704 of the APA states that "[a]gency action reviewable by statute and *final* agency action for which there is no other adequate remedy ... are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review of the *final* agency action." 5 U.S.C. § 704 [emphasis added].

FN11. Plaintiff alleges that any attempt to exhaust his administrative remedies would be "futile" because some of the named defendants in the instant action would be involved in deciding the merits of plaintiff's appeal. *See McNeese v. Board of Education*, 373 U.S. 668, 676 (1963). The court finds no merit in this contention, first because it appears to be unfounded factually, and second because even if true, plaintiff has not demonstrated that those defendants would be "predisposed" to decide the "work-relatedness" issue against plaintiff after he was afforded an opportunity to forward his position at an administrative hearing.

END OF DOCUMENT

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH,       :
      Plaintiff      :    Civil No. 1:CV-01-1026
                     :
    v.             :    (Judge Rambo)
                     :
UNITED STATES OF AMERICA,  :    (Magistrate Judge Smyser)
      Defendant      :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 12th day of September, 2001, she served a copy of the attached

### BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Jerome Smith
Reg. No. 19145-018
FPC Allenwood
P.O. Box 1000
Montgomery, PA 17752

ANITA L. LIGHTNER
Paralegal Specialist