2 Cr

MCC:KLM:all/2001V00474

ORIGINAL

(16)
9/13/01

FILED
HARRISBURG

SEP 1 2 2001

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH,
          Plaintiff     :    Civil No. 1:CV-01-1026

             :

        v.         :    (Judge Rambo)

             :

UNITED STATES OF AMERICA,    :    (Magistrate Judge Smyser)
          Defendant    :

RECORD TO BRIEF IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS OR, INTHE ALTERNATIVE, FOR SUMMARY JUDGMENT

MARTIN C. CARLSON
United States Attorney

MARK E. MORRISON
United States Attorney

ANITA L. LIGHTNER
Paralegal Specialist
228 Walnut Street, 2nd Floor
P.O. Box 11754
Harrisburg, PA 17108-1754
(717)221-4482

Dated:    September 12, 2001

## INDEX

Declaration of Alicia Vasquez . . . . . . . . . . . . . . . . . R.1

Judgment in a Criminal Case, United States District
Court for the Eastern District of Pennsylvania,
Case No. 2:95CR00467-1 . . . . . . . . . . . . . . . . . . . . R.4

SENTRY Inmate History Report, dated July 17, 2001 . . . . . R.10

Declaration of Toa G. Chaw, M.D. . . . . . . . . . . . . . R.12

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH,              :
       Plaintiff         :
                          :

     vs.                  :      Civil No. 1:CV-01-1026
                          :      (Judge Rambo)
                          :      (Mag. Judge Smyser)

UNITED STATES OF AMERICA,   :
       Defendant        :

### DECLARATION OF ALICIA VASQUEZ

I, Alicia Vasquez, hereby make the following declaration:

1.  I am an Attorney Advisor for the United States Department of Justice, Federal Bureau of Prisons, Federal Correctional Complex, Allenwood, Pennsylvania.  I have been employed with the Bureau of Prisons since August 2000.

2.  As an Attorney Advisor with the Federal Bureau of Prisons, I have access to information maintained by the Bureau of Prisons, including inmate files.

3.  I have reviewed the complaint filed by the Plaintiff, inmate Jerome Smith, register number 19145-018, in which the Plaintiff alleges a FTCA cause of action based upon alleged medical negligence.

4.  Attached hereto as Attachment 1 is a true and correct copy of the Judgment and Commitment Order regarding the Plaintiff dated September 16, 1996.

**1**

5.  Attached hereto as Attachment 2 is a true and correct copy
    of the Inmate History- Admissions and Releases printed from
    the Bureau of Prisons' SENTRY computer system.  This report
    shows that the Plaintiff did not enter the Federal Bureau of
    Prisons until November 8, 1995.


I declare that any and all records attached to this declaration
are true and accurate copies of records maintained in the
ordinary course of business by the Federal Bureau of Prisons.  I
further declare that the foregoing is true and correct to the
best of my knowledge and belief, and is given under penalty of
perjury pursuant to 28 U.S.C. §1746.

Executed this _9th_ day of August, 2001.


ALICIA VASQUEZ
Attorney Advisor
Federal Bureau of Prisons
Consolidated Legal Center - Allenwood
White Deer, Pennsylvania 17887

2

<u>Smith v. United States</u>
Civil Action Number 1:CV-1026
Middle District of Pennsylvania

Declaration of Alicia Vasquez


# Attachment 1

AUG- 3-01 FRI 10:09 AM                                                                P. 1

AO 245 S (Rev. 7/92) Sheet 1 - Judgment in a C

# UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | JUDGMENT IN A CRIMINAL CASE |
|---|---|
| V. | (For Offenses Committed On or After November 1, 1987) |
| JEROME SMITH | Case Number: 2:95CR00467-1 |

STUART PATCHEN

(Name of Defendant)             Defendant's Attorney

THE DEFENDANT:
[X] pleaded guilty to count(s)  1, 3
[ ] pleaded nolo contendere to count(s)_____
    which (was) (were) accepted by the court.
[ ] was found guilty on count(s)_____
    after a plea of not guilty.

| Title/Sect | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18 USC §922(a) (6) | FALSE STATEMENT IN CONNECTION WITH ACQUISITION OF A FIREARM | 09/29/93 | 1 |
| 18 USC §922(a) (6) | FALAW STATEMENT IN CONNECTION WITH ACQUISITION OF A FIREARM | 10/15/93 | 3 |

The defendant is sentenced as provided in pages 1 through _5_ of this judgment.   The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

[ ] The defendant has been found not guilty on count(s) _____
    and is discharged as to such count(s).
[X] Count(s) 2, 4, 5 _____ (is)(are) dismissed on the motion of the United States.

    IT IS FURTHER ORDERED that the defendant shall notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

Defendant's Soc. Sec. No.: 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
Defendant's Date of Birth:  04/09/58

                                              09/16/96
                                    Date of Imposition of Judgment

                                        _Charles R Weiner_
Defendant's Mailing Address:            Signature of Judicial Officer

BOX 420, FCI AT FAIRTON

FAIRTON                    NJ 08320      CHARLES R.  WEINER
                                         JUDGE USDC EDPA
                                         Name & Title of Judicial Officer
Defendant's Residence Address:

626 MC KEAN STREET                            9/16/96
                                                Date

PHILADELPHIA              PA 19145

                                    A TRUE COPY CERTIFIED TO FROM THE RECORD

                                    DATED: 9-17-96

                                    ATTEST: _Minty Velasco_
                                    DEPUTY CLERK, UNITED STATES DISTRICT COURT
                                    EASTERN DISTRICT OF PENNSYLVANIA

4

AUG- 3-01 FRI 10:11 AM                                                         P. 1

AO 245 S (Rev. 7/92) Sheet 2 - Imprisonment

DEFENDANT: JEROME SMITH
CASE NUMBER: 2:95CR00467 - 1                              Judgment--Page 2 of 5

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 100 months.

100   months on Count(s): 1 AND 3 TO RUN CONCURRENTLY


The defendant is to start paying the fine imposed of $1,000.00, during his incarceration period.
The special assessment of $100.00 is to be paid during his period of incaration.

[ ] The court makes the following recommendations to the Bureau of Prisons:

That the defendant be incarcerated at FCI at Fairton, N.J. or at an institution near by his family,

[X] The defendant is remanded to the custody of the United States Marshal.
[ ] The defendant shall surrender to the United States Marshal for this district.
    [ ] at _____ am/pm on _____ .
    [ ] As notified by the United States Marshal.

[ ] The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons
    [ ] before 2:00 p.m. on _____ .
    [ ] As notified by the United States Marshal.
    [ ] As notified by the probation office.


## RETURN

I have executed this judgment as follows:

Defendant delivered on  9-30-96  to  FCI Fort Dix (West)  at
Fort Dix, NJ 08640                  , with a certified copy of this judgment.

                              for  John M. Hurley, Warden
                              UNITED STATES MARSHAL

                         By  A. J. Anderson, U.S.
                             Deputy Marshal

5

AUG- 3-01 FRI 10:12 AM                                                P. 2

AO 245 S (Rev. 7/92) Sheet 3 – Supervised Release

DEFENDANT: JEROME SMITH
CASE NUMBER: 2:95CR00467 - 1                          Judgment--Page 3 of 5

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of: 3 years.

    3 years as to Count(s): 1 AND 3 TO RUN CONCURRENTLY

    The defendant shall report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons. While on supervised release, the defendant shall not commit another federal, state, or local crime and shall not illegally possess a controlled substance. The defendant shall not possess a firearm or destructive device. The defendant shall comply with the standard conditions that have been adopted by this court (set forth below). If this judgment imposes a fine or a restitution obligation, it shall be a condition of supervised release that the defendant pay any such fine or restitution that remains unpaid at the commencement of the term of supervised release in accordance with the schedule of payments set forth in the financial obligation portion of this Judgment. The defendant shall comply with the following additional conditions:

    That the defendant shall provide the probation officer with access to any requested financial information. The defendant shall not incur new credit charges or open additional line of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule. The defendant shall participate in a program of testing and treatment for drug abuse, as directed by the probation officer, until such time as the defendant is released from the program by the probation officer. The defendant shall participate in a program of mental health treatment, as directed by the probation officer, until such time as the defendant is released from the probation officer.

## STANDARD CONDITIONS OF SUPERVISION

1) the defendant shall not leave the judicial district without the permission of the court or probation officer;
2) the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
3) the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4) the defendant shall support his or her dependents and meet other family responsibilities;
5) the defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
6) the defendant shall notify the probation officer within 72 hours of any change in residence or employment;
7) the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by physician;
8) the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;
11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AUG- 3-01 FRI 10:09 AM                                                    P. 2
DEFENDANT: JEROME SMITH
CASE NUMBER: 2:95CR00467-1                              Judgment--Page 4 of 5

## FINANCIAL OBLIGATIONS

The defendant shall pay the following total financial penalties in accordance with the schedule of
payments set out below:

| Count | Assessment | Fine | Restitution |
|---|---|---|---|
| 1 | $ 50.00 | $ 1,000.00 | $ .00 |
| 3 | $ 50.00 | $ .00 | $ .00 |
| **Totals:** | $ 100.00 | $ 1,000.00* | $ .00 |

(*total printed is the amount entered and not the sum of the counts listed)

### FINE

The fine includes any costs of incarceration and/or supervision.
[X] The court has determined that the defendant does not have the ability to pay interest in full.
  It is ordered that:
    [X] The interest requirement is waived.
    [ ] The interest requirement is modified as follows:

### RESTITUTION

Each restitution payment shall be divided proportionately among the payees named unless specified in the
priority payment column below. Restitution shall be paid to the following persons in the following amounts:

| Name of Payee | Amount of Restitution | Priority Order of Payment |
|---|---|---|
|  |  |  |

### SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment; (2) restitution; (3) fine principal;
(4) fine costs; (5) interest; (6) penalties.

The total fine and other monetary penalties shall be paid as follows:
  [ ] in full immediately.
  [X] in full not later than _____ .
  [X] in installments which the probation officer shall establish and may periodically modify provided
     that the entire financial penalty is paid no later than 5 years after release from incarceration, if
     incarceration is imposed. If probation is imposed, not later than the expiration of probation.
  [ ] in monthly installments of $ _____ over a period of _____ months. The probation officer
     may periodically modify the payment schedule, provided the penalty is paid in full in accordance
     with the term specified above. The first payment is due 30 days after the date of this judgment.
     The second and subsequent payments are due monthly thereafter.

All financial penalty payments are to be made to U.S. Clerk of Court Eastern District of Pennsylvania except those payments made through the Bureau of Prisons' Inmate Financial Responsibility Program.

The defendant shall pay interest on any fine of more than $2,500, unless the fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. §3612(f). All of the above payment options are subject to penalties for default and delinquency pursuant to 18 U.S.C. §3612(g).

Unless otherwise ordered by the court, any financial penalty imposed by this order shall be due and payable during the period of incarceration, with any unpaid balance to be a condition of supervised release. Any financial penalties collected while the defendant is incarcerated shall be reported by the Bureau of Prisons to the Clerk of the Court and the probation officer. The probation officer shall notify the United States District Court, the Clerk of the Court, and the United States Attorney's Office of the payment schedule and any modifications to that schedule.

AO 245 S (Rev. 7/87) Sheet 6 - Statement of

DEFENDANT: JEROME SMITH

CASE NUMBER: 2:95CR00467 - 1                    Judgment--Page 5 of 5

## STATEMENT OF REASONS

[X] The Court adopts the factual findings and guideline application in the presentence report.

### OR

[ ] The Court adopts the factual findings and guideline application in the presentence report except

__Guideline Range Determined by the Court:__

Total Offense Level: ___24___

Criminal History Category: _____V_____

Imprisonment Range: __92__ to __115__ months and _____ months consecutive.

Supervised Release Range: ___2___ to ___3___ years

Fine Range: $ ___10,000.00___ to $ ___100,000.00___

     [ ] Fine waived or imposed below the guideline range, because of inability to pay.

Restitution: $ _____

     [ ] Full restitution is not ordered for the following reason(s):


[X] The sentence is within the guideline range, that range does not exceed 24 months, and the court finds no reason to depart from the sentence called for by application of the guidelines.

### OR

[ ] The sentence is within the guideline range, that range exceeds 24 months, and the sentence is imposed for the following reasons(s):


### OR

[ ] The sentence departs from the guideline range
[ ] upon motion of the government, as a result of defendant's substantial assistance.
[ ] for the following reason(s):

**8**

<u>Smith v. United States</u>
Civil Action Number 1:CV-1026
Middle District of Pennsylvania

Declaration of Alicia Vasquez

# Attachment 2



```
REG NO..: 19145-018 NAME....: SMITH, JEROME
CATEGORY: ARS        FUNCTION: PRT        FORMAT:

FCL    ASSIGNMENT   DESCRIPTION                  START DATE/TIME STOP  DATE/TIM
2-U    RELEASE      RELEASED FROM IN-TRANSIT FACL 09-30-1996 2333 09-30-1996 233
2-U    A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 09-30-1996 2110 09-30-1996 233
FAI    HLD REMOVE   HOLDOVER REMOVED             09-30-1996 2110 09-30-1996 211
FAI    A-HLD        HOLDOVER, TEMPORARILY HOUSED  09-16-1996 1710 09-30-1996 211
FAI    COURT        COURT APPEARANCE W/SCHED RETRN 09-16-1996 0810 09-16-1996 171
FAI    A-PRE        PRE-SENT ADMIT, ADULT         05-28-1996 1851 09-16-1996 081
FAI    ADM CHANGE   RELEASE FOR ADMISSION CHANGE  05-28-1996 1850 05-28-1996 185
FAI    A-HLD        HOLDOVER, TEMPORARILY HOUSED  05-28-1996 1800 05-28-1996 185
FAI    COURT        COURT APPEARANCE W/SCHED RETRN 05-28-1996 0745 05-28-1996 180
FAI    A-HLD        HOLDOVER, TEMPORARILY HOUSED  03-29-1996 1600 05-28-1996 074
FAI    COURT        COURT APPEARANCE W/SCHED RETRN 03-29-1996 0800 03-29-1996 160
FAI    A-HLD        HOLDOVER, TEMPORARILY HOUSED  03-12-1996 1800 03-29-1996 080
I-T    RELEASE      RELEASED FROM IN-TRANSIT FACL 03-12-1996 1800 03-12-1996 180
I-T    A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 03-12-1996 0530 03-12-1996 180
A01    RELEASE      RELEASED FROM IN-TRANSIT FACL 03-12-1996 0530 03-12-1996 053
A01    A-ADMIT      ADMITTED TO AN IN-TRANSIT FACL 03-11-1996 0935 03-12-1996 053
ATL    PRE OTHER    PRE SENT RMV TO OTHER BOP FACL 03-11-1996 0935 03-11-1996 093
ATL    A-PRE        PRE-SENTENCE ADMISSION        03-04-1996 1754 03-11-1996 093
ATL    ADM CHANGE   RELEASE FOR ADMISSION CHANGE  03-04-1996 1753 03-04-1996 175
ATL    A-HLD        HOLDOVER, TEMPORARILY HOUSED  03-04-1996 1742 03-04-1996 175
BUT    STDY CMPLT   STUDY AND OBS COMPLETED       03-04-1996 1300 03-04-1996 174
BUT    A-DES        DESIGNATED, AT ASSIGNED FACIL 01-03-1996 1920 03-04-1996 130
FAI    PRE REMOVE   PRE SENT DETAINEE REMOVED     01-03-1996 0800 01-03-1996 192
FAI    A-PRE        PRE-SENTENCE ADMISSION        11-17-1995 1649 01-03-1996 080
FAI    COURT        COURT APPEARANCE W/SCHED RETRN 11-17-1995 0745 11-17-1995 164
FAI    A-PRE        PRE-SENTENCE ADMISSION        11-14-1995 1824 11-17-1995 074
FAI    COURT        COURT APPEARANCE W/SCHED RETRN 11-14-1995 0800 11-14-1995 182
FAI    A-PRE        PRE-SENTENCE ADMISSION        11-13-1995 2001 11-14-1995 080
ATL    PRE REMOVE   PRE SENT DETAINEE REMOVED     11-13-1995 1000 11-13-1995 200
ATL    A-PRE        PRE-SENTENCE ADMISSION        11-08-1995 1818 11-13-1995 100
```

```
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

10

```
ALFLN   531.01 *        ●      INMATE HISTORY    ●       *      07-17-2001
PAGE 001        *                  ADM-REL               *      08:16:56
```

REG NO..: 19145-018 NAME....: SMITH, JEROME
CATEGORY: ARS        FUNCTION: PRT          FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| ALW | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-16-2001 1250 | CURRENT |
| ALW | ESCORT TRP | ESC TRIP OTHER THAN LOCAL HOSP | 07-16-2001 0800 | 07-16-2001 1250 |
| ALW | A-DES | DESIGNATED, AT ASSIGNED FACIL | 12-20-2000 1334 | 07-16-2001 0800 |
| ALW | ESCORT TRP | ESC TRIP OTHER THAN LOCAL HOSP | 12-20-2000 1035 | 12-20-2000 1334 |
| ALW | A-DES | DESIGNATED, AT ASSIGNED FACIL | 12-18-2000 1436 | 12-20-2000 1035 |
| 5-R | RELEASE | RELEASED FROM IN-TRANSIT FACL | 12-18-2000 1436 | 12-18-2000 1436 |
| 5-R | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 12-18-2000 1413 | 12-18-2000 1436 |
| ALF | HLD REMOVE | HOLDOVER REMOVED | 12-18-2000 1413 | 12-18-2000 1413 |
| ALF | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 12-13-2000 1405 | 12-18-2000 1413 |
| 0-B | RELEASE | RELEASED FROM IN-TRANSIT FACL | 12-13-2000 1405 | 12-13-2000 1405 |
| 0-B | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 12-13-2000 1254 | 12-13-2000 1405 |
| ALW | TRANS SEG | TRANSFER-SEGREGATION | 12-13-2000 1254 | 12-18-2000 1436 |
| ALW | A-DES | DESIGNATED, AT ASSIGNED FACIL | 11-07-2000 1245 | 12-13-2000 1254 |
| ALW | ESCORT TRP | ESC TRIP OTHER THAN LOCAL HOSP | 11-07-2000 0919 | 11-07-2000 1245 |
| ALW | A-DES | DESIGNATED, AT ASSIGNED FACIL | 07-05-2000 0830 | 11-07-2000 0919 |
| B01 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 07-05-2000 0830 | 07-05-2000 0830 |
| B01 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 07-05-2000 0638 | 07-05-2000 0830 |
| LEW | HLD REMOVE | HOLDOVER REMOVED | 07-05-2000 0638 | 07-05-2000 0638 |
| LEW | A-BOP HLD | HOLDOVER FOR INST TO INST TRF | 06-30-2000 1852 | 07-05-2000 0638 |
| S14 | RELEASE | RELEASED FROM IN-TRANSIT FACL | 06-30-2000 1852 | 06-30-2000 1852 |
| S14 | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 06-30-2000 1415 | 06-30-2000 1852 |
| FTD | TRANSFER | TRANSFER | 06-30-2000 1415 | 06-30-2000 1415 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 09-29-1997 1456 | 06-30-2000 1415 |
| FTD | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 09-26-1997 0756 | 09-29-1997 1456 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 09-26-1997 0755 | 09-26-1997 0756 |
| FTD | LOCAL HOSP | ESC TRIP TO LOCAL HOSP W/RETN | 09-25-1997 1219 | 09-26-1997 0755 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 09-25-1997 1218 | 09-25-1997 1219 |
| FTD | ESCORT TRP | ESC TRIP OTHER THAN LOCAL HOSP | 09-24-1997 2306 | 09-25-1997 1218 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 09-15-1997 1112 | 09-24-1997 2306 |
| 5-L | RELEASE | RELEASED FROM IN-TRANSIT FACL | 09-15-1997 1112 | 09-15-1997 1112 |
| 5-L | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 08-25-1997 1310 | 09-15-1997 1112 |
| FTD | STATE WRIT | RELEASE ON STATE WRIT | 08-25-1997 1310 | 09-15-1997 1112 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 03-14-1997 0955 | 08-25-1997 1310 |
| 5-L | RELEASE | RELEASED FROM IN-TRANSIT FACL | 03-14-1997 0955 | 03-14-1997 0955 |
| 5-L | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 03-13-1997 0900 | 03-14-1997 0955 |
| FTD | STATE WRIT | RELEASE ON STATE WRIT | 03-13-1997 0900 | 03-14-1997 0955 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 02-25-1997 1054 | 03-13-1997 0900 |
| 5-L | RELEASE | RELEASED FROM IN-TRANSIT FACL | 02-25-1997 1054 | 02-25-1997 1054 |
| 5-L | A-ADMIT | ADMITTED TO AN IN-TRANSIT FACL | 01-16-1997 1100 | 02-25-1997 1054 |
| FTD | IAD | INTERSTATE AGRMNT ON DETAINERS | 01-16-1997 1100 | 02-25-1997 1054 |
| FTD | A-DES | DESIGNATED, AT ASSIGNED FACIL | 09-30-1996 2333 | 01-16-1997 1100 |

G0002        MORE PAGES TO FOLLOW . . .

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH,                        :
      Plaintiff              :
                                  :
      vs.                    :    Civil No. 1:CV-01-1026
                                  :    (Judge Rambo)
                                  :    (Mag. Judge Smyser)
UNITED STATES OF AMERICA,            :
      Defendant              :

## DECLARATION OF TOA G. CHAW, M.D.

I, Toa G. Chaw, M.D., do hereby state and declare the following:

1.  I am currently employed as a Medical Doctor for the United
    States Department of Justice, Federal Bureau of Prisons,
    Federal Prison Camp, Allenwood, Pennsylvania.  I am a Board
    Certified Medical Doctor in the state of Maryland.  I have
    been employed with the Bureau of Prisons since June 1999.

2.  As a Doctor with the Federal Bureau of Prisons, I have
    access to inmate's medical files and records, in the
    ordinary course of my duties.

3.  I have reviewed the complaint filed by the Plaintiff, inmate
    Jerome Smith, register number 19145-018, in which the
    Plaintiff alleges a FTCA cause of action based upon alleged
    medical negligence.

**12**

4.    I have reviewed the medical files of Plaintiff Smith and I
      have examined medical records in his file relating to his
      back and leg problems.  I have attached the Plaintiff's
      medical records from September 30, 1996, when he arrived at
      the Federal Correctional Institution (FCI) Ft. Dix, through
      to the present to this declaration.

5.    My review of his medical records has revealed that the
      Plaintiff has had a long history of lower back and leg
      problems, resulting from falls as well as gunshot wounds.
      The Plaintiff's medical files include several Magnetic
      Resonance Imaging examinations ("MRI"s) of his spine taken
      *prior to* his incarceration. For example, an MRI taken in
      1988 revealed a moderate central disc herniation at the L
      4/5 level and a small central herniation of L5-S/1.  And an
      MRI examination in 1992 revealed disc degeneration at L 4/5
      and L 5-S/1 levels.  Further, a medical consult from a
      hospital in Florida dated October 16, 1994 revealed a
      diagnosis of Degenerative Joint Disease of the spine.

6.    A letter in the Plaintiff's medical file from an orthopedic
      surgeon dated November 2, 1989, explains that even in 1989,
      six years before his federal incarceration began, the

Plaintiff already had a history of back and leg problems.

The letter states:

> "[Jerome Smith] was beaten badly, and sustained major injury to his lower back.  He is having increasing radicular pain into hsi back, going down into his left leg. . . [Another doctor] apparently is presently treating him for injuries, when he was a security guard and slipped in grease. . . Dr. Romy, you are apparently treating him for a herniated disc that occurred when he fell in the navy-yard, when he was a fire watcher in 1984.  This man is presently hospitalized, under the service of Dr. Noller, because of the massive beating that he sustained in the riot, at the [state] prison."

(See letter dated November 2, 1989 from Dennis B. Zaslow, D.O. in the medical file)  The Plaintiff did not enter the Federal Bureau of Prisons until five years after that letter was written.  Thus, he had a pre-existing back and leg injury.

7.    X-rays of the lumbar spine taken on March 19, 1997, show intervetebratal disc space narrowing at L 4/5, degenerative joint changes of L 5-S/1, and schlerotic changes seen about the right sacroiliac joint.  Importantly, this x-ray was taken prior to the alleged fall in UNICOR.

8.    Medical records reveal that on December 10, 1998, the Plaintiff reported to Health Services complaining of back pain due to a fall while at UNICOR.  Health services staff noted that the Plaintiff was found to have no inflamation or

discoloration and he had a good range of motion.

9.   Health Services staff treated the Plaintiff with Ibuprofen, 600 mg. tablets, and Flexeril, 10 mg. tablets.  The Plaintiff was given a medical idle, which means that he did not need to report to work on December 10 or 11, 1998.  In addition, an x-ray of the Plaintiff's back and left knee were taken.  The x-ray report indicates: "There is intervertebral disk space narrowing at the L4-5 level."  In addition the report notes, "No fracture or dislocation or joint effusion is present," and "Normal left knee."  (See Medical Records).

10.  Medical records indicate that on April 20, 1999, the Plaintiff reported to Health Services with lower back pain. Medical records show that the Plaintiff was examined by the Clinical Director at FCI Ft. Dix.  This examination included checking the Plaintiff's range of motion, deep tendon reflexes, blood pressure, pulse, weight, heart, abdomen, and back, as well as reviewing the Plaintiff's continuing medical conditions (e.g. diabetes).  Records indicate that the Plaintiff was educated about his diet and exercise, as he was at that time 274 pounds.  The Plaintiff was given a work restriction of no prolonged standing or sitting for

more than 30 minutes and no lifting over 15 pounds.

11.  Contrary to the Plaintiff's assertions that he reported to
     Health Services on June 2, 1999 with lower back pain, the
     medical records indicated that he was seen on that date for
     chest pain.  The medical records indicate that the Plaintiff
     reported to Health Services complaining of chest pain, was
     examined, treated, and he then returned back to his unit in
     stable condition.

12.  On June 14, 1999, the Plaintiff was seen by Health Services
     staff due to his complaints of lower back pain.  Medical
     records indicate that the Plaintiff was examined and the
     exam was essentially unchanged.  The Plaintiff was given
     Ibuprofen, 600 mg., and in response to his request for a
     cane, one was issued to him.

13.  On June 16, 1999, the Plaintiff was seen by a Medical Doctor
     at the Orthopedic Clinic at FCI Ft. Dix.  Medical records
     indicate that the Plaintiff was determined to have chronic
     lumbar disc syndrome with herniation at L 4/5 and L 5-S/1.
     Medical records indicate that the doctor recommended
     activity modification including systemic weight loss.
     Records indicate that the Plaintiff weighed 270 pounds at

that time.

14. Medical records indicate that the Plaintiff reported to
    Health Services on June 28, 1999, complaining of lower back
    pain, "especially when I am sitting down for a long time."
    Medical records show that the Plaintiff was given a full
    exam, including reviews of the Plaintiff's blood pressure
    and pulse, temperature, eyes, nose, and throat, heart and
    lungs, abdomen, as well as a review of the Plaintiff's range
    of motion with respect to his back pain.  Records indicate
    that the Plaintiff was continued on Ibuprofen and treatment
    for diabetes.  In addition, the Plaintiff was given a
    convalescent pass which excused him from work through July
    2, 1999.

15. Medical records indicate that on August 13, 1999, the
    Plaintiff failed to show up for an appointment.

16. Medical records indicate that on August 24, 1999, the
    Plaintiff had a MRI performed which revealed that the L4-5
    disc was bulging centrally.  A September 22, 1999 letter in
    the Plaintiff's medical file from an outside orthopedic
    specialist indicates a diagnosis of lumbar disc disease at
    L4-5 and L56-S1.  This indicates that there was no change

**17**

since the 1992 MRI, except for increased arthritis.  The doctor's recommendation at that time was that the Plaintiff should be seen by a specialist to determine whether or not more aggressive management would be necessary.

17. Medical records indicate that on September 22, 1999, the Plaintiff was seen in the Orthopedic Clinic.  The records further indicate that the MRI results were explained to the Plaintiff.

18. Contrary to the Plaintiff's assertion that he reported to Health Services on November 15, 1999, complaining of back pain, the medical records reveal that the Plaintiff was seen in the Hypertension Clinic for routine follow-up care.  He had been seen by medical staff in the Hypertension Clinic regularly over the course of his incarceration roughly every few months.  The records indicate that the doctor who saw the Plaintiff on that day made a note of his history of back problems.

19. A December 1999 report completed by a doctor who examined the Plaintiff indicates that he weighed 270 pounds and weight loss was again recommended.

Page 7

**18**

20.  Medical records show that the Plaintiff was given medical idle status on January 19, 2000 through January 21, 2000, which allowed him to stay in his room and not report to work.

21.  The Plaintiff's medical records indicate that he failed to report to an appointment to be seen in the Orthopedic Clinic on May 24, 2000.

22.  Medical records indicate that on June 20, 2000, the Plaintiff was examined and treated by Health Services staff due to complaints of lower back pain.

23.  On July 5, 2000, the Plaintiff arrived at the Federal Prison Camp in Allenwood, Pennsylvania (FPC Allenwood).  The Plaintiff was given a lower bunk restriction to last indefinitely and clinic appointments were scheduled.

24.  The medical records indicate that the Plaintiff was seen by a doctor at the Allenwood FPC on July 17, 2000.  The record indicates that the doctor indicated to the Plaintiff that he needed to lose weight and exercise, at which point the Plaintiff stood up and left the doctor's office before the doctor could provide a complete examination.  The record

**19**

indicates that the Plaintiff came back to the doctor's office with his counselor present as well.  The record indicates that the doctor informed the Plaintiff that at present his chronic back problem did not require surgery. The record indicates that the doctor told the Plaintiff that he should lose some weight as it would be beneficial to his heart and his back.  The doctor prescribed that the Plaintiff continue with his current medications.

25.  The Plaintiff's medical records indicate that Health Services staff examined and treated the Plaintiff on July 21, 2000 for his back and leg pain.

26.  Medical records indicate that on September 11, 2000, the Plaintiff reported to Health Services with complaints of pain in both legs.  The Plaintiff was given Tylenol and placed on medical idle and bed rest for two days which allowed him to remain in his room and not report for work.

27.  Medical records indicate that the Plaintiff reported to Health Services on September 13, 2000, requesting another medical idle so he would not have to report to work. Records indicate that the Plaintiff was not interested in receiving an exam from medical staff; he simply wanted an

extension on his idle status.  The medical record indicates
that the Plaintiff was ambulatory without difficulty.  The
Plaintiff was given restricted work duty to include no
prolonged standing or walking and no heavy lifting over 20
pounds.  Medical records indicate that the Plaintiff
departed quite angered and indicated to the staff member
that he would "file on him."

28.  Medical records indicate that the Plaintiff returned to
Health Services later that day requesting a medical idle
from another member of the medical staff.  Records reveal
that the Plaintiff was given two days of medical idle in
response to his request.

29.  Medical records indicate that the Plaintiff did not show up
for an appointment in the clinic on September 19, 2000.

30.  Medical records indicate that on September 22, 2000, the
Plaintiff reported to Health Services complaining of lower
back pain.  The Plaintiff was prescribed to continue with
the Tylenol he was given and he received a medical idle for
3 days.

**21**

31.  Medical records indicate that on September 25, 2000, the
     Plaintiff reported to Health Services complaining of back
     pain.  Records indicate that he was given a medical idle
     with bed rest for four days and a referral to a neurologist
     was written.

32.  Medical records indicate that on November 7, 2000 the
     Plaintiff was seen by a neurologist who recommended surgery
     after new MRI is taken for reassessment for surgery.

33.  Medical records indicate that I examined the Plaintiff on
     December 15, 2000.  Records of this examination indicate
     that the Plaintiff said he had no pain so long as he took
     his medications.  Further, the Plaintiff stated that he
     refused to take his medications to protest the
     unsatisfactory treatment he believed he was receiving at FPC
     Allenwood.  During this examination, the Plaintiff reported
     to me that he had a gunshot wound to his left leg in 1982
     and a gunshot wound to his back in 1985.

34.  Medical records indicate that on December 21, 2000, the
     Plaintiff was counseled about possible surgery, as he had
     the MRI taken on December 20, 2000.  Records indicate that
     the Plaintiff was worried about surgery because an outside

Page 11

22

doctor had told him of the risks of being overweight and that doctor had advised him to try non-surgery treatment first.  The record shows that the Plaintiff expressed worry regarding rehabilitation.  The record indicates that the Plaintiff was informed he could discuss the matter with the surgeon and together they could decide what the best treatment would be.

35.  Medical records indicate that on January 16, 2001, the Plaintiff refused to go on a scheduled trip to the Neurosurgeon's office because he did not like the officer who was escorting the trip.  The medical records indicate that the Plaintiff was informed that it is difficult to get an appointment with the neurosurgeon, but he still refused to go.

36.  Medical records indicate that on February 6, 2001, the Plaintiff was given Tylenol and three days bed rest due to complaints of back pain.

37.  Medical records indicate that on March 7, 2001, the Plaintiff was given medication refills, including Tylenol for back pain, and he was given another three days of bed rest during which time he was excused from work.

38. Medical records indicate that the Plaintiff failed to report for a scheduled appointment in the medical clinic on March 13, 2001.

39. Medical records indicate that on March 21, 2001, the Plaintiff reported to Health Services requesting a medical idle because he did not want to report to work. A medical idle was denied and the Plaintiff was informed that an appointment with the neurosurgeon would be made soon.

40. Medical records indicate that the Plaintiff was given convalescent status on April 2, 2001 through April 4, 2001, which allowed him to be excused from work.

41. Medical records indicate that on May 11, 2001, the Plaintiff requested a second mattress, which was provided to him.

42. Medical records indicate that the Plaintiff was given convalescent status on June 5, 2001 through June 6 , 2001, which allowed him to be excused from work for those two days. In addition, medical records show he was again given convalescent status on June 18, 2001, through June 20, 2001, and again from July 26, through July 27, 2001.

24

43.  Medical records indicate that on July 31, 2001, the
     Plaintiff was seen by a neurosurgeon.  The Consultation
     Report from that appointment indicates that the neurosurgeon
     found the Plaintiff to have degenerative disc disease and
     mild stenosis.  The neurosurgeon recommended anti-
     inflammatory medication and exercise, and to hold off on
     surgery at present.

44.  Medical records reveal that on August 2, 2001, medical staff
     discussed the neurosurgeon's report with the Plaintiff and
     he understood and agreed with the diagnosis and treatment
     plan.

45.  In summary, it appears that the Plaintiff has had a long
     history of back and leg pain, which pre-dates his federal
     incarceration.  This pain has been treated by Bureau of
     Prisons' medical staff on numerous occasions.  The
     Plaintiff's medications were refilled on three month
     intervals.  In addition, the Plaintiff has been provided
     several MRI's and consultations with outside specialists.
     In my opinion, Plaintiff Jerome Smith has received
     appropriate medical care for his complaints of back and leg
     pain throughout his incarceration.  In addition, we have

treated the Plaintiff's other associated medical conditions, such as hypertension, diabetes, and depression, which began prior to his incarceration.

I declare that any and all records attached to this declaration are true and accurate copies of records maintained in the ordinary course of business by the Federal Bureau of Prisons.  I further declare that the foregoing is true and correct to the best of my knowledge and belief, and is given under penalty of perjury pursuant to 28 U.S.C. §1746.

Executed this __CO th__ day of August, 2001.


_____

Toa G. Chaw, MD
Federal Prison Camp, Allenwood, PA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

JEROME SMITH,                          :
                    Plaintiff          :        Civil No. 1:CV-01-1026
                                       :
             v.                        :        (Judge Rambo)
                                       :
UNITED STATES OF AMERICA,              :        (Magistrate Judge Smyser)
                    Defendant          :


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 12th day of September, 2001, she served a copy of the attached

### RECORD TO BRIEF IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

by placing said copy in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Jerome Smith
Reg. No. 19145-018
FPC Allenwood
P.O. Box 1000
Montgomery, PA 17752


ANITA L. LIGHTNER
Paralegal Specialist